Alfred B. SHAPIRO and Gregory J. Wentz, Plaintiffs-Appellants,

v.

DRUG ENFORCEMENT ADMINISTRATION, Defendant-Appellee.

Nos. 82–2818, 82–2819.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1983.

Decided Nov. 16, 1983.

Certiorari Granted April 2, 1984.
See 104 S.Ct. 1706.

Barry Sullivan, Jenner & Block, Chicago, Ill., for plaintiffs-appellants.

Douglas Letter, Appellate Staff Atty., Civil Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BAUER, WOOD, Circuit Judges, and NEAHER,* Senior District Judge.

BAUER, Circuit Judge.

Plaintiffs-appellants Shapiro and Wentz each were convicted in unrelated cases of violating 21 U.S.C. § 841 (1980), and both currently are serving prison terms. Shapiro and Wentz filed separate requests with the Drug Enforcement Administration (DEA) seeking access to their DEA files pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1976) (FOIA) and the Privacy Act, 5 U.S.C. § 552a (1975) (Privacy Act). The district court denied their requests on the ground that the records are exempt under Privacy Act Section (j)(2) (Exemption (j)(2)) and FOIA Section (b)(3) (Exemption 3). We affirm.

## I. BACKGROUND

In May 1981, Wentz filed a request with the DEA to obtain a copy of the DEA records pertaining to him; Shapiro made his request in October 1981. In April 1982, the DEA notified Wentz that all the documents he requested were in the DEA Investigative Reporting and Filing System and thus were exempt from access pursuant to Exemption (j)(2) of the Privacy Act and Exemption 3 of the FOIA. In June 1982, the DEA notified Shapiro that his request had been denied for the same reasons.

In March 1982, Wentz filed suit to compel release of the documents he had requested. Wentz later added a claim that the agency

---

* The Honorable Edward R. Neaher, Senior Judge of the United States District Court for the Eastern District of New York, is sitting by designation.

be required to correct allegedly inaccurate information in his files pursuant to the Privacy Act. Shapiro filed his suit in May 1982.

The district court consolidated the two cases because they raised identical issues. In October 1982, the district court granted the DEA's motions for summary judgment. The court held that the DEA had met the. Privacy Act Exemption (j)(2) requirements by exempting these records from disclosure at 28 C.F.R. § 16.98(c). The district court also held that because the Privacy Act is a statute that exempts this information from disclosure, the information is exempt under FOIA Exemption 3 as well. Finally, the court held that since Privacy Act Exemption (j)(2) applies to the Act's correction provisions, Wentz's request for correction of the allegedly inaccurate records also must be denied.

## II. PRIVACY ACT EXEMPTION (j)(2)

■ Congress enacted the Privacy Act in 1974. The Act guarantees individuals access to certain agency records about themselves, *see* 5 U.S.C. § 552a(d), and prevents the release of such records to third parties without the consent of the individual except under specific instances, *see* 5 U.S.C. § 552a(b). The Privacy Act applies only to agency "records," which the Act defines as agency files or documents about individuals, contained in a "system of records," which is a group of agency records from which an agency retrieves information using the name of the individual or some other personal identifier. *See* 5 U.S.C. §§ 552a(a)(4) and (5).

An individual's right of access under the Privacy Act is not unlimited, however. Sections (j) and (k) of the Act give agencies the discretion to refuse to disclose certain records. Under (j)(2), the head of an agency whose principal function is law enforcement may promulgate rules exempting from access any system of records containing information compiled for the purpose of criminal investigation.[1]

The DEA has promulgated a regulation pursuant to Exemption (j)(2) that exempts its Investigative Reporting and Filing System from access to individuals.[2] The regulation justifies the exemption on the ground that access to such records would alert a subject to the existence of an investigation and thereby impede law enforcement efforts.[3] As the district court held, this explanation is sufficiently specific to satisfy the (j)(2) requirement that the regulation include reasons why the system is to be exempted.

■ Appellants' argument that this explanation renders the exemption inapplica-

---

1. 5 U.S.C. § 552a(j)(2) provides:

The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (c)(6), (7), (9), (10), and (11), and (i) if the system of records is—

\* \* \* \* \* \*

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests,

the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section.

The Act labels this a "general" exemption, as opposed to the "specific" exemptions at 5 U.S.C. § 552a(k).

2. The regulation appears at 28 C.F.R. 16.98(c).

3. 28 C.F.R. 16.98(d)(3).

ble to them because they currently are imprisoned is without merit. First, the fact that appellants already have been convicted does not mean that the DEA is no longer investigating them. Moreover, Exemption (j)(2) does not require that a regulation's rationale for exempting a record from disclosure apply in each particular case. It is sufficient that the system of records be exempted properly, as the DEA has done here.

■ The DEA supported its motion for summary judgment in each case with an affidavit by Russ Arslan, the chief of the DEA's Freedom of Information Division. The affidavits stated that all references to Wentz and Shapiro are contained in criminal investigatory files that have been exempted according to published regulations.[4]

Wentz and Shapiro argue that the Arslan affidavits are insufficient. They contend that this court should require the DEA to prepare a *Vaughn* index of the requested documents, which would oblige the agency to "specify in detail which portions of the document are disclosable and which exempt." *Vaughn v. Rosen,* 484 F.2d 820, 827 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1977).

While courts mandate *Vaughn* indexing where an agency relies solely on an FOIA exemption to withhold information, the procedure does not apply to Exemption (j) of the Privacy Act. The FOIA exemptions are "specific" exemptions that apply only to individual documents; thus, courts require an indexed listing of the requested documents because "[w]hen the Government makes a general allegation of exemption, the court may not know if the allegation applies to all or only a part of the informa-

tion." *Id.* at 825. In contrast, Privacy Act Exemption (j) applies to whole systems of records. The only requirements are that the agency's principal function be law enforcement, that the system of records be compiled for the purpose of criminal investigation, and that the agency promulgate regulations exempting the system of records. As already noted, the DEA has met these requirements here. The Privacy Act requires nothing more from an agency seeking the (j)(2) exemption.[5] The district court thus properly held that the requested documents are exempt under the Privacy Act.

### III. FREEDOM OF INFORMATION ACT

■ Appellants Wentz and Shapiro next argue that they may obtain the requested records under the FOIA. Because their position conflicts with both the statutory language and legislative history of the FOIA and the Privacy Act, we affirm the district court's denial of access under the FOIA as well.

### A. Background

Congress enacted the FOIA in 1966. The Act is a general disclosure statute whose purpose is to promote public access to federal government records. Just as the Privacy Act does not allow unlimited access to agency records, the FOIA contains exemptions that allow an agency to withhold records under certain circumstances; these nine "specific" exemptions are listed at 5 U.S.C. § 552(b).

Exemption 3, 5 U.S.C. § 552(b)(3), provides that the FOIA does not apply to information "specifically exempted" by other

---

**4.** Arslan's affidavit in Wentz's case states:

I hereby verify that each and every reference to the Plaintiff found in DEA records systems is subject to exemption (j)(2) of the Privacy Act (5 USC 552a) and further, that said references are contained in criminal investigatory files which are located in a system of records that has been properly exempted as published in the Department of Justice Regulations cited at 28 CFR 16.98 et seq.

R. 14, at 3.

Arslan's affidavit in Shapiro's case is basically the same. See R. 7, at 2.

**5.** This conclusion is underscored by the Privacy Act's requirement of *de novo* review and possible *in camera* inspection if an agency invokes a Section (k) "specific" exemption. See 5 U.S.C. 552a(g)(3)(A). There is no such provision for agencies that seek the "general" exemptions in Section (j).

statutes.[6] The DEA has relied on Exemption 3 to deny appellants' request. It reasons that because the requested information is exempted from disclosure by the Privacy Act, the information also is unavailable under the FOIA. Wentz and Shapiro contend that the Privacy Act is not an Exemption 3 "statute," and thus the DEA may not use Exemption 3 to deny their request.

The district court held that the Privacy Act is an FOIA Exemption 3 statute. This holding is supported by our decision in *Terkel v. Kelly,* 599 F.2d 214 (7th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). In *Terkel,* we held that the FBI was not required to disclose documents under the FOIA that were exempt from release under Privacy Act Exemption (k): "Although the Freedom of Information Act does not contain a comparable exemption, we agree with the lower court that the two statutes must be read together, and that the Freedom of Information Act cannot compel the disclosure of information that the Privacy Act clearly contemplates to be exempt." *Id.* at 216.

The Fifth Circuit also has held that requesters may not use the FOIA to avoid the Privacy Act nondisclosure provisions. In *Painter v. FBI,* 615 F.2d 689 (5th Cir.1980), the court specifically held that the Privacy Act is an FOIA Exemption 3 statute. Several recent district court decisions also have held that an agency may not be compelled to disclose information under the FOIA if that information is exempt from disclosure under the Privacy Act. *See Martin v. FBI,* No. 83 C 123 (N.D.Ill. Sept. 30, 1983); *Rachel v. Department of Justice,* No. 83 C 0434 (N.D.Ill. Aug. 1, 1983); *Turner v. Ralston,* 567 F.Supp. 606 (W.D.Mo.1983); *Anderson v. Huff,* No. 3–82–52 (D.Minn. June 8, 1982); *Heinzl v. Immigration and Naturalization Service,* No. C–80–1210 (N.D.Cal. Dec. 17, 1981).

On the other hand, two circuit courts recently have held that the Privacy Act is not an FOIA Exemption 3 statute. *See Porter v. Department of Justice,* 717 F.2d 787 (3rd Cir.1983); *Provenzano v. Department of Justice,* 717 F.2d 799 (3rd Cir.1983); *Greentree v. U.S. Customs Service,* 674 F.2d 74 (D.C.Cir.1982).

Appellants urge us to reconsider our holding in *Terkel v. Kelly, supra.* Upon close examination of both the statutory language and relevant legislative history, we are persuaded to reaffirm our earlier decision. We hold that the district court correctly decided that the Privacy Act's nondisclosure provisions apply to FOIA requests under FOIA Exemption 3.

### B. The Literal Requirements of FOIA Exemption 3

In order to qualify under FOIA Exemption 3, a statute must exempt specifically the requested information from disclosure, and either must "leave no discretion on the issue" of disclosure, or must establish "particular criteria for withholding" or refer to "particular types of matters to be withheld." *See* 5 U.S.C. § 552(b)(3). Privacy Act Exemption (j)(2) clearly meets these requirements. First, its provisions specifically exempt the information requested here. Second, it describes the type of record to be withheld with sufficient specificity to meet the requirement that it refer to "particular types of matters to be withheld." Appellants' argument that Exemption (j)(2) vests too much discretion with the agencies is thus without merit.

Appellants contend that Congress still could not have intended the Privacy Act to be an Exemption 3 statute because nowhere in the legislative history of the Privacy Act or the 1976 proceedings that amended Exemption 3 did Congress refer to the Privacy Act as an Exemption 3 statute. This argument is also without merit, however, be-

---

**6.** 5 U.S.C. § 552(b)(3) provides:

This section does not apply to matters that are—

\* \* \* \* \* \*

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

cause appellants have not shown any congressional statement that the Privacy Act is *not* an Exemption 3 statute. Rather, Congress set out specific criteria in Exemption 3, and the Privacy Act meets these requirements.

Appellants also argue that because Privacy Act Exemption (j) exempts "*any system of records within the agency from any part of this* section" (emphasis added), it is limited to the Privacy Act itself, Section 552a. Yet this interpretation would allow a requester to bypass the Exemption (j) nondisclosure provision and seek the information through the FOIA instead. For reasons that we outline below in our discussion of Privacy Act Section (b)(2), this result is contrary to clearly stated congressional intent.

### C. The Interrelationship of the Privacy Act and the Freedom of Information Act: Privacy Act Section (b)(2)

#### 1. *Statutory Language*

■ In addition to the argument that the term "this section" at Exemption (j) renders the exemption inapplicable to the FOIA disclosure requirements, appellants contend that Privacy Act Section (b)(2) specifically preserves the FOIA disclosure obligations. Section (b)(2) provides:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to

a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

\* \* \* \* \* \*

(2) required under section 552 of this title [FOIA].

5 U.S.C. § 552a(b)(2).

Appellants argue that Section (b) is the provision designed to govern disclosure under the Privacy Act, and because Section (b) is not covered under Privacy Act Exemption (j),[7] Congress has exempted the FOIA disclosure requirements from Exemption (j).[8] For several reasons, however, we cannot accept this interpretation of the interrelationship of these two statutes. First, we disagree with appellants' reading of Section (b). *The provisions of Section (b)(1)–(11) all require agency disclosure to a third party requester even though the individual to whom the record pertains has not consented to the disclosure.* Yet the introductory language of Section (b) shows that the provisions of (b)(1)–(11) do not apply when the individual consents to disclosure. The language of this opening proviso shows that (b)(2) governs only third party requests for information; where the individual has made a first party request for information pertaining to himself, the FOIA exemption carved out at Section (b)(2) simply does not apply.[9] Section (d) provides sole access for first party requests under the Act.[10]

---

7. *See supra* note 1.

8. The court in *Greentree v. U.S. Customs Service,* 674 F.2d 74 (D.C.Cir.1982), relied on this construction in reaching its conclusion.

9. This conclusion is supported by the legislative history, which shows that Section (b)(2) was designed to protect third party access to agency records. *See* Subsection C, part 2 of text *infra.*

10. 5 U.S.C. § 552a(d) provides in pertinent part:

Each agency that maintains a system of records shall—

(1) *upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany*

him, *to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;*

(2) *permit the individual to request amendment of a record pertaining to him and—*

(A) *not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and*

(B) *promptly, either—*

(i) *make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or*

(ii) *inform the individual of its refusal to amend the record in accordance with his request, the reason for the refusal, the proce-*

## 2. *Legislative History*

Second, appellants' position would result in an emasculation of Privacy Act Exemption (j)(2) that would be inconsistent with clearly articulated congressional intent. According to appellants' interpretation, any requester could use the FOIA to force an agency to disclose information even when that information is specifically exempt from disclosure under Exemption (j). The scope of Exemption (j) thus would be limited to the scope of any applicable FOIA exemptions. This limitation on Exemption (j) is contrary to the intent of Congress, however, as shown both by the exemption's language, which is broader than the FOIA exemption covering law enforcement records (Exemption 7), and by the relevant legislative history of the Privacy Act.

The legislative history reveals Congress' special concern that individuals not be permitted access to certain records containing information about their own criminal investigations. In its report on the Senate version of the Privacy Act, the Senate Government Operations Committee observed that law enforcement agencies often maintain files with "highly sensitive and usually confidential information collected by law enforcement officers in anticipation of criminal activity"; the report concluded that "it would not be appropriate to allow individuals to see their own intelligence or investigative files." S.Rep. No. 93–1183, 93d Cong., 2d Sess., at 23 (1974).

The House of Representatives Government Operations Committee report commented on the House version's exemption from disclosure for Central Intelligence Agency and criminal justice records and also concluded: "The Committee believes that such a broad exemption is permissible for these two types of records because they contain particularly sensitive information." H.R.Rep. No. 93–1416, 93d Cong., 2d Sess.,

at 18 (1974). This congressional concern that first party requesters not be allowed to require agencies to disclose criminal justice records relating to them is supported by Representative Moorehead's explanation of the Privacy Act when the legislation was presented on the House floor: "[e]ach individual shall be given access to his record within the system on his request, with the exception of files related to criminal investigations or national security." 120 Cong. Rec. 36644 (1974), *reprinted in* Legislative History of the Privacy Act of 1974, Source Book on Privacy 883 (1976) (hereinafter Source Book).

Appellants place great emphasis on the original Senate version of the Privacy bill, which contained a provision making the Act's nondisclosure provisions subject to other federal laws and regulations, *see* Section 205(b), S. 3418, Source Book at 143. This provision, they maintain, was included in the final compromise bill as Section (b)(2), and thus shows that Congress intended FOIA access to be unaffected by the Privacy Act nondisclosure provisions.

We cannot accept this interpretation of congressional intent. As noted above, in its final version Section (b)(2) is prefaced by an introductory proviso making it inapplicable where an individual requests access to his own records. Where Congress intended to retain provisions in the Senate bill that outlined other aspects of the relationship between the Privacy Act and the FOIA, it did so without qualification. For example, the original Senate version contained a provision that stated that an agency could not use FOIA exemptions to deny disclosure under a Privacy Act request, *see* S. 3418, 93d Cong., 2d Sess. § 205(a), *reprinted in* Source Book at 143. The final Act retained this provision in Section (q) [11] without any limiting provisos.[12]

---

dures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;

&ast; &ast; &ast; &ast; &ast; &ast;

**11.** No agency shall rely on any exemption contained in section 552 [FOIA] of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section.
5 U.S.C. § 552a(q).

**12.** The Fifth Circuit relied on this reasoning to

Section (b)(2) apparently was included to guarantee that the access that the press and media enjoyed under the FOIA would not be curtailed by the Privacy Act. The Senate Report explained that an earlier version of Subsection (b)(2) was included in the Privacy bill "to meet the objections of press and media representatives that the statutory right of access to public records and the right to disclosure of government information might be defeated if such restrictions were to be placed on the public and press." S.Rep. No. 1183, 93d Cong., 2d Sess. 71 (1974), *reprinted in* Source Book at 224.

In response to our conclusion that their interpretation would render Privacy Act Exemption (j) virtually meaningless, appellants contend that under their position Exemption (j) would retain some meaning because it would exempt agencies from other requirements of the Act not related to disclosure. For example, an agency could rely on Exemption (j) to avoid many of the Section (e) requirements intended to insure that records are collected and maintained accurately. *See* 5 U.S.C. § 552a(e). *See also Greentree, supra,* 674 F.2d at 81.

Although Exemption (j) indeed specifically exempts agencies from complying with certain Privacy Act requirements besides disclosure, it also clearly exempts agencies from the disclosure provision, Section (d). Appellants' interpretation here is valid only if Section (b), to which Exemption (j) does not apply, covers both first party and third party requests. Since we are persuaded that Section (d) alone governs first party access, we must abide by the literal terms of Exemption (j) and hold that it exempts agencies from being required to disclose certain investigatory records to first party requesters.

Our conclusion is fortified by the legislative history of the Act. As we have noted, Congress expressed its concern that individuals not use the Act to gain access to sensitive criminal justice records. On the other hand, appellants have shown no examples of congressional concern that agencies be allowed to use the Privacy Act exemptions to avoid other Act requirements. We cannot ignore the clearly stated legislative intent and relegate the effect of the Act's exemptions to other provisions that apparently were less important to Congress.

Appellants also argue that various contemporary governmental interpretations of the Privacy Act contradict the government's current position. *See* OMB Report at 40 Fed.Reg. 56742–43 (1975); Justice Department Regulation at 28 C.F.R. 16.57. In response, the government notes that the Justice Department issued a letter several months after the Privacy Act was passed asserting that the Act was the exclusive avenue for first party requests, *see* Source Book at 1177–78, and that the OMB has proposed new guidelines stating that the Privacy Act is an Exemption 3 statute, *see* 48 Fed.Reg. 36359 (1983). These differing interpretations do not help us in our current task. Rather, they show only that government agencies have been confused about the interrelationship between the Privacy Act and the FOIA.

In summary, the legislative history of the Privacy Act shows Congress' concern that individuals not use the Act to obtain access to their own criminal investigative files. It makes little sense to conclude that Congress would enact specific nondisclosure provisions in the Privacy Act to address this concern, while at the same time allowing individuals to bypass these exemptions by using the broader access terms of the FOIA.

### 3. *Effect of Government's Construction: Full Meaning for Both Acts*

Whereas appellants' interpretation would deprive the Privacy Act access exemptions of any effect beyond the scope of the FOIA exemptions, the government's construction allows both acts to retain their full meaning. On the one hand, agencies could refuse first party requests for the type of

---

hold that the Privacy Act is an Exemption 3 statute. *See Painter v. FBI,* 615 F.2d 689 (5th Cir.1980).

information described in Exemption (j), as the DEA did here. At the same time, the FOIA still would retain its vitality. For example, although FOIA Exemption 7 allows greater access to law enforcement data than does Privacy Act Exemption (j) in some instances, the FOIA exemption applies in many cases where the Privacy Act's exemption does not.[13] Exemption 7 governs any third party request, any request for documents that are not "records" within a "system of records," and any first party request for "records" that an agency has not exempted from access according to the Privacy Act's requirements.

Both appellants and the court in *Greentree, supra,* 674 F.2d at 79–80, note that the government's construction could result in a "third party anomaly." Because third party requests under the FOIA are protected from the Privacy Act's nondisclosure provisions by Privacy Act Section (b)(2), it is possible that a third party could have access to information about an individual that the individual himself could not obtain.

Merely showing that such an anomaly might exist, however, is not sufficient. The crucial question is whether Congress was aware of this possibility and drafted the Privacy Act to prevent it from occurring. The legislative history does not show that Congress was aware that this "third party anomaly" would arise. The floor managers of the Act explained the amendment that added Section (b)(2) to the Act as follows:

> The compromise amendment would add an additional condition of disclosure to the House bill which prohibits disclosure without written request of an individual unless disclosure of the record would be pursuant to Section 552 of the Freedom of Information Act. This compromise is designed to preserve the *status quo as interpreted by the courts* regarding the disclosure of personal information under that section (the FOIA).

Source Book at 861 (Senator Ervin's explanation to Senate), 989 (Representative Moorehead's explanation to House) (emphasis added).

Under the "status quo as interpreted by the courts" at that time, third party requesters enjoyed few rights of access to records concerning other persons. The courts interpreted FOIA Exemption 6, which exempts certain files from access where disclosure would invade personal privacy, very broadly. *See, e.g., White Hobby USA, Inc. v. IRS,* 502 F.2d 133 (3d Cir.1974); *Rural Housing Alliance v. U.S. Dept. of Agriculture,* 498 F.2d 73 (D.C.Cir.1974). Moreover, although Congress had amended FOIA Exemption 7 to expand access to criminal investigative records just before passing the Privacy Act, this was not the "status quo as interpreted by the courts" at that time.

Appellants also have not shown that even today the third party anomaly would arise more than rarely. As we have noted, many first party and third party requests will concern records that are not covered under the Privacy Act at all. Even where a record would be exempt from a first party request because of a Privacy Act exemption, FOIA Exemptions 6 and 7 likely would block the third party request as well.

### D. Conclusion

A thorough examination of both the language of the FOIA and the Privacy Act and the relevant legislative history persuades us that the Privacy Act is a "statute" under FOIA Exemption 3. The district court properly held that because the

---

13. FOIA Exemption 7 states that:

> (b) This section does not apply to matters that are—* * * *
>
> (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

5 U.S.C. § 552(b)(7).

records that Wentz and Shapiro seek are exempt from disclosure under the Privacy Act Exemption (j)(2), they may not be disclosed under an FOIA request. Since Exemption (j)(2) also covers requests for corrections, the denial of Wentz's request for correction of the allegedly inaccurate records also was proper.

Accordingly, the district court's decision granting the DEA's motion for summary judgment is affirmed.

AFFIRMED.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and WEIGEL, District Judge.*