**Brett C. KIMBERLIN, Plaintiff,**

v.

**UNITED STATES DEPT. OF JUSTICE, et al., Defendant.**

**No. 84 C 2873.**

United States District Court,
N.D. Illinois, E.D.

Feb. 27, 1985.

Donald V. Morano, Chicago, Ill., for plaintiff.

Elizabeth Landes, Asst. U.S. Atty., Kevin J. Egan, Winston & Strawn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Brett Kimberlin is presently confined in the Metropolitan Correctional Center ("MCC") in Chicago based on his conviction in 1981 in an Indiana federal court for several violations of federal laws, including causing personal injury by means of an explosive device to Carl and Sandra De-Long. In 1983 Sandra DeLong, on behalf of herself and Carl (then deceased), won a civil judgment against Kimberlin in an Indiana state court in the amount of 1.61 million dollars based on the same facts which led to Kimberlin's criminal conviction. On November 21, 1983, Thomas Gahl, a U.S. probation officer for the federal district court of the southern district of Indiana and the officer assigned to the Kimberlin case, sent a letter to the warden of the MCC to inform that institution of the civil judgment entered against Kimberlin. Patrick Leddy, then Kimberlin's case manager at the MCC, read that letter and informed Gahl and Kennard Foster [1], one of the prosecutors in Kimberlin's criminal case, that Kimberlin had been sending funds from his prison commissary account to a female outside the prison. Gahl then allegedly relayed that information to Sandra DeLong and/or Paula Kight, DeLong's attorney. In March of 1984 Sandra DeLong, through her attorney Paula Kight, obtained a writ of attachment against all monies in Kimberlin's prison commissary account in an attempt to satisfy the civil judgment. De-Long's affidavit supporting the motion for the writ stated that she had received information that Kimberlin was transferring

---

**1.** Since Kimberlin's only claim for damages stems from the disclosure by Gahl and no allegation is made that Foster passed the information on to anyone, the disclosure to Foster is irrelevant.

$125 per month from his commissary account to an unidentified female civilian.

Kimberlin then filed a one-count complaint in this court, claiming that disclosing the information that he was sending money from his commissary account to someone outside the prison violated the Privacy Act, 5 U.S.C. § 552a.[2] Defendants Kight and DeLong answered the complaint, and then all the defendants moved to dismiss the complaint or in the alternative for summary judgment, basically claiming that the Privacy Act had not been violated and that the Privacy Act did not authorize suits against individuals. Kimberlin then sought leave to amend his complaint and this court entered and continued that motion so that defendants could file briefs on whether the amended complaint, if accepted, would cure the defects of the original complaint. All defendants have now filed motions to dismiss or in the alternative for summary judgment against the proposed amended complaint.

Because the amended complaint includes all of the charges made in the original complaint (except for certain claims Kimberlin concedes are defective) this opinion will discuss only the proposed amended complaint. If it can withstand the motions against it, then it will stand as the complaint in this action. If not, then it will not be accepted, *Hakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir.1984), and the original complaint must be dismissed as well since it has no more merit than the amended complaint.

The amended complaint retains the alleged violations of the Privacy Act as count 1, naming only the Bureau of Prisons and the Parole Commission as defendants (though of course the complaint alleges that these two entities acted through the other individual defendants)[3]. A new second count alleges that Gahl, by disclosing the information to Kight and DeLong, violated Kimberlin's constitutional rights to privacy and due process and is liable as an agent of U.S. District Court under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A new third count alleges that Gahl, Leddy, Kight and DeLong conspired to violate Kimberlin's rights to privacy and due process. No legal basis is identified in the third count but Kimberlin's supporting brief makes clear that a *Bivens* action is intended. Kimberlin has dropped his original request for injunctive relief, but asks for compensatory (i.e., pain, suffering, mental anguish and litigation expenses) and punitive damages, costs and attorney's fees.

## I. Count 1: The Privacy Act Claim

The Privacy Act forbids any agency (defined in § 552(e) as essentially any part of the executive branch) to disclose information it has concerning an individual without that person's prior written consent, unless the information falls within one of the 12 exceptions appearing in § 552a(b). Each agency is required, with exceptions not relevant here, to keep an accurate accounting of the "date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) … and the name and address of the person or agency to whom the disclosure is made" (§ 552a(c)). Section 552a(g) authorizes civil suits against agencies which fail to "comply with any … provision of [the Privacy Act], or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." If the failure to comply is found to be intentional or willful a plaintiff can recover actual damages (but not less than $1000) and costs and attorney fees (§ 552a(g)(4)).

■ As an initial matter, defendants assert that the Parole Commission, which is named only in count 1, is not a proper defendant to this action because the claim

---

**2.** What Kimberlin expects to accomplish here is not clear since anything he might collect in this action (with the possible exception of costs and fees) would presumably go toward satisfying the outstanding civil judgment in favor of DeLong.

**3.** The Department of Justice is also named in this count on the ground that as the department of which the other defendants are part it is an indispensable party.

against it is based on the acts of defendant Gahl, and Gahl, being an employee of the federal district court (see 18 U.S.C. § 3654), is not subject to the Privacy Act. Kimberlin tries to argue that Gahl is an employee of the Parole Commission (an executive agency) by pointing to 18 U.S.C. § 3655, which requires probation officers to "perform such duties with respect to persons on parole as the United States Parole Commission shall request". Even assuming that performing duties at the request of the Parole Commission makes a probation officer an employee of the Justice Department, however, Gahl was neither acting pursuant to Parole Commission order nor acting with respect to a person on parole, so he must have been an employee of the court at the time he acted. Therefore, the Parole Commission is dismissed from this action.

The remaining defendant Bureau of Prisons ("BOP") asserts that the only two systems of records that contain information regarding a prisoner's commissary account have been exempted from the civil remedies section (§ 552a(g)). That exemption, which appears at 28 C.F.R. § 16.97, was made pursuant to 5 U.S.C. § 552a(j)(2), which allows an agency head to promulgate rules exempting systems of records from certain provisions of the Privacy Act if (1) the principal function of the agency relates to "enforcement of criminal laws, including ... the activities of correctional, probation, pardon, or parole authorities," and (2) the records consist of "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." Id.

■ If the rule exempting these two systems of records were proper under § 552a(j)(2), then Kimberlin's Privacy Act claim would have to be dismissed. However, that section requires that the exempting rule give reasons for the exemption. The only reason given at 28 C.F.R. § 16.97 for exempting these two systems of records from the civil remedy section is that the records are exempt from § 552a(d). Section 552a(d), however, re-

lates only to *access* to records by the individual whom the records are about, and says nothing concerning *disclosure* of records to third parties. Therefore, while an adequate justification has perhaps been given for preventing access to these systems of records by the subject of the records (though the justification is difficult to understand when a prisoner's own commissary account is involved), no justification has been given for exempting these systems of records from the conditions of disclosure to third parties imposed by § 552a(b). Since no adequate reason has been given, these two systems of records have not been properly exempted from the kind of civil action Kimberlin's complaint presents. This case therefore differs from *Shapiro v. Drug Enforcement Administration,* 721 F.2d 215, 217 (7th Cir.1983), *judgment vacated on other grounds sub nom. United States Department of Justice v. Provenzano,* — U.S. ——, 105 S.Ct. 413, 83 L.Ed.2d 242 (1984), where the reason given for denying an individual access to his Drug Enforcement Administration files—that "access to such records would alert a subject to the existence of an investigation and thereby impede law enforcement efforts"—was found to be "sufficiently specific" to satisfy the reason-giving requirement of § 552a(j)(2).

■ The BOP also argues that Leddy's disclosure to Gahl was proper under the "routine use" exception of § 552a(b)(3). "Routine use" is defined in § 552a(a)(7) as "the use of such record for a purpose which is compatible with the purpose for which it was collected." As required by § 552a(e)(4)(D), the BOP has published the routine uses of the records in the two systems involved in this case. One of the systems of records the government contends contains the disclosed information (the Inmate Central Records System) has as one of its routine uses "to provide information relating to federal offenders to federal ... probation officials." *Privacy Act Issuances,* 1981 Comp., Vol. II at 241. This routine use would appear to justify the disclosure to Gahl, who was Kimber-

lin's probation officer at the time. However, in the regular briefing on this motion Kimberlin claimed that the Inmates Central Records System did not contain the information concerning Kimberlin's disposition of his commissary funds, and the supplemental briefs the parties were invited to file to clarify that question indicate that Kimberlin is correct, so that routine use is not available to the BOP.

Routine uses of both systems of records include (1) "to provide information source to officers and employees of the Department of Justice who have a need for the information in the performance of their duties", and (2) "to provide information source to state and federal law enforcement officials for investigations, possible criminal prosecutions, civil court actions, or regulatory proceedings". *Privacy Act Issuances, supra* at 240–41. The first routine use does not apply here since Gahl is not an officer or employee of the Justice Department, 18 U.S.C. § 3654.[4] Whether the second routine use applies depends on whether Gahl, as a probation officer, is a "federal law enforcement official." The parties have offered no definition of that term and neither the statute nor the regulations define it.

Although probation officers have a duty to assist prisoners and probationers and to that extent are like social workers, the Supreme Court has recognized that a probation officer "is a peace officer, and as such is allied, to a greater or lesser extent, with his fellow peace officers." *Minnesota v. Murphy,* —— U.S. ——, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984) (quoting *Fare v. Michael C.,* 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979)). Federal probation officers have the power to arrest a probationer, which certainly is a function for a law enforcement official. 18 U.S.C. § 3653. And though as noted the Privacy Act does not define "law enforcement", the inclusion of probation officers in the phrase

"any activity pertaining to the enforcement of criminal laws" in the general exemption section (§ 552a(j)(2)) does suggest that Congress viewed probation officers as belonging to the class of law enforcement officials. From these facts the court concludes that as a matter of law Gahl was acting as a law enforcement official within the meaning of the regulation: he was attempting to see that Kimberlin not escape the consequences of his crime and that the victims be compensated according to their lawfully obtained civil judgment. Therefore, the disclosure of the information concerning Kimberlin's commissary account funds was made pursuant to a routine use exception and did not violate the Privacy Act.

■ Kimberlin also complains that the BOP did not properly account for the disclosure to Gahl as required by § 552a(c). This claim received no discussion by the parties, but it is no basis for recovery here. The civil remedies section allows suit to be brought for any violation of the Privacy Act which has "an *adverse effect* on an individual" (§ 552a(g)(1)(D)). Kimberlin alleges no adverse effect from the alleged failure to record the disclosure to Gahl and indeed he could not. As Congress explained, the purpose of the record-keeping requirement was to "permit an individual to determine what records pertaining to him are ... disseminated by" an executive agency. 88 Stat. 1896 (1974). Kimberlin does not allege he tried to find out what disclosures had been made concerning him and in any event he learned of the disclosure when the writ of attachment was filed. Therefore, he has suffered no adverse effect from the failure to record the disclosure and lacks standing to complain of it.[5]

## II. Counts 2 and 3: *Bivens*

■ Kimberlin's second and third counts rest on his claim that disclosure of the

---

4. If this court's determination (see *supra* pp. 81–82) that Gahl is not an employee of the Justice Department is incorrect, then this first routine use would apply and defeat Kimberlin's suit.

5. This conclusion does not mean that the BOP is free to ignore the requirements of § 552a(c).

information in question violated his right to due process and his constitutionally protected privacy rights. There is clearly no due process right involved here. The harm Kimberlin alleges (mental anguish, pain and suffering) is akin to damage to reputation, which has been held not to constitute a liberty or property interest in and of itself. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cameo Convalescent Center v. Senn,* 738 F.2d 836, 843 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985). The only property Kimberlin risks losing here is the money from his commissary account. If that happens it will be pursuant to a court action which certainly affords all the process Kimberlin is due.

■ Kimberlin's privacy claim also fails. The right to privacy includes two separate but related interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977). These two interests are often referred to as the "confidentiality" and "autonomy" strands of the privacy right. *Barry v. City of New York,* 712 F.2d 1554, 1559 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). The autonomy strand relates to such matters as "marriage, procreation, contraception, family relationships, and child rearing and education." 429 U.S. at 600 n. 26 (quoting *Paul v. Davis,* 424 U.S. at 713, 96 S.Ct. at 1166, 47 L.Ed.2d 405 (1976)). Financial information is not covered by the autonomy strand. *Plante v. Gonzalez,* 575 F.2d 1119, 1132 (5th Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979).

■ Whether the confidentiality strand applies here depends first on whether Kimberlin has a reasonable expectation of privacy in the non-disclosure of his disposition of the funds in his commissary account. That question "necessarily entails a balancing of interests." *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Kimberlin tries to define his interest in reliance on cases dealing with compulsory financial disclosure laws. That course is difficult enough since, though courts typically state that some right of privacy attaches to financial records, Kimberlin has cited only one decision which actually struck down a financial disclosure law. *City of Carmel-by-the-Sea v. Young,* 2 Cal.3d 259, 466 P.2d 225, 85 Cal.Rptr. 1 (Cal.1970); *but see Barry, supra,* 712 F.2d 1554 (2d Cir.1983). More important, Kimberlin's situation is distinguishable from those cases since here Kimberlin has already disclosed the information to outsiders; namely, the prison officials in charge of commissary accounts. (It may be that the prison *requires* all prisoners to keep their funds in a commissary account, but Kimberlin is not attacking that requirement and in view of the legitimately diminished rights of a prisoner, *Hudson,* 104 S.Ct. at 3199, he could not.)

A closer analogy is found in cases dealing with public disclosure of information the plaintiff has already submitted to some outsider. For example, in *St. Michael's Convalescent Hospital v. California,* 643 F.2d 1369 (9th Cir.1981), the court rejected a claim that public disclosure of cost information the plaintiff hospital had to submit to a state agency under the state's medicare program violated the constitutional right to privacy. The court found that no privacy right in the information existed and that even if it did the state's reason for disclosure outweighed any privacy right involved. Similarly, in *United States v. Miller,* 425 U.S. 435, 442–43, 96 S.Ct. 1619, 1623–1624, 48 L.Ed.2d 71 (1976), the Supreme Court found no expectation of privacy existed in a person's bank records, and that was so even if the bank was required by law to keep the records and therefore was to be regarded as an agent for the government.

Here, the intrusion on privacy was less than that involved in *St. Michael's* and *Miller.* Kimberlin's entire financial history was not disclosed in detail; rather, all that was disclosed was that Kimberlin was

sending money outside the prison to an unidentified female. Since Kimberlin had already disclosed that information to others, he retained no privacy right in it. And even if he had some expectation of privacy in that information, that interest is easily outweighed by the government's interest in seeing that the victims of a crime and the recipients of a court judgment against a prisoner are not deprived of their lawful right to a recovery. Therefore, no constitutionally protected interest is involved here and counts 2 and 3 of the proposed amended complaint fail to state a cause of action.[6]

IT IS THEREFORE ORDERED that this action is dismissed in its entirety with prejudice.

---

**6.** Since counts 2 and 3 are dismissed for failure to state a claim, the other arguments by Gahl, Kight and DeLong need not be addressed. The court notes, however, that personal jurisdiction over Gahl, an Indiana resident lacking any contacts with this forum, is questionable. See *Textor v. Board of Regents,* 711 F.2d 1387, 1392 (7th Cir.1983). Kight and DeLong, on the other hand, apparently waived that objection by not raising it in their answer. *T & R Enterprises v.*

*Continental Grain Co.,* 613 F.2d 1272, 1277 (5th Cir.1980) (objections to personal jurisdiction waived if not raised in first responsive pleading); *Ross v. United States,* 574 F.Supp. 536, 539 (S.D.N.Y.1983) (same). Kight and DeLong's claim that they, as private citizens, can never be liable under *Bivens* is also incorrect, *Tower v. Glover,* —— U.S. ——, 104 S.Ct. 2820, 2824–25, 81 L.Ed.2d 758 (1984), though perhaps here Kimberlin's conspiracy allegations are insufficient.