**Brett C. KIMBERLIN, Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants-Appellees.**

No. 85–1454.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1985.

Decided April 9, 1986.

Donald V. Morano, Chicago, Ill., for plaintiff-appellant.

William F. Murphy, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and CAMPBELL, Senior District Judge.*

CUMMINGS, Chief Judge.

Plaintiff appeals from the dismissal of his Privacy Act and *Bivens* claims. He argues that the dissemination of information about his prison commissary account violated the Privacy Act. He further claims that the communication of that information violated his rights to due process and privacy. We affirm.

---

\* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. The defendants named in the original complaint are the Department of Justice, Office of U.S. Attorney (S.D.Ind.), Bureau of Prisons, Sandra DeLong, Paula Kight, Patrick Leddy and three Assistant U.S. Attorneys (S.D.Ind.), namely, Richard Darst, Jack Thar and Kennard Foster.

## I. STATEMENT OF THE CASE AND FACTS

Brett Kimberlin, a prisoner, initially filed a one-count complaint claiming that a disclosure by his prison case manager Leddy to his probation officer Gahl that plaintiff was sending money outside the prison from his commissary account violated the Privacy Act, 5 U.S.C. § 552a. The original defendants[1] moved to dismiss, contending that the Privacy Act had not been violated because the disclosure was permitted as a routine use under the Act. Kimberlin then asked to file an amended complaint. The motion was continued while the parties briefed whether or not the amended complaint would cure the defects in the original complaint. The district court's order dismissing the action refers only to the proposed amended complaint. *Kimberlin v. United States Department of Justice*, 605 F.Supp. 79, 81 (N.D.Ill.1985).

The amended complaint continued to assert the Privacy Act violation, naming the Bureau of Prisons (BOP) and the Department of Justice (DOJ) as additional defendants. An additional two counts alleged that disclosure of the information to private citizens violated plaintiff's constitutional rights to privacy and due process and that a conspiracy existed among the individual defendants to violate his constitutional rights. Kimberlin seeks compensatory and punitive damages as well as costs and attorneys' fees.

The district court dismissed all three counts of the proposed amended complaint, holding, *inter alia*, (1) there was no violation of the Privacy Act because the routine use exception of 5 U.S.C. § 552a(b)(3) applied; (2) the *Bivens* due process action

---

The defendants named in the amended complaint are: the Bureau of Prisons; the Department of Justice; the Parole Commission; Patrick Leddy, former case manager of plaintiff at the Metropolitan Correctional Center in Chicago; Thomas Gahl, a U.S. probation officer in the Southern District of Indiana assigned to the criminal case against plaintiff; Sandra DeLong, widow of Carl DeLong who was allegedly injured by plaintiff's explosive device, and Paula Kight, lawyer for Mrs. DeLong.

failed because no property interest had been lost; (3) the *Bivens* privacy claim failed because Kimberlin did not have a reasonable expectation of privacy in his commissary account; and (4) the conspiracy count failed because no constitutional violation occurred.

Kimberlin was convicted in 1981 for detonating an explosive device and is currently residing at the Chicago Metropolitan Correctional Center (MCC). In 1983, Sandra DeLong won a civil judgment against Kimberlin on behalf of her husband Carl, subsequently deceased, in the amount of 1.61 million dollars for injuries he suffered in the explosion. Thomas Gahl, the probation officer assigned to Kimberlin, sent a letter to the warden of the MCC to inform him of the civil judgment. Kimberlin's prison case manager, Patrick Leddy, in turn informed Gahl that Kimberlin was regularly sending funds from his prisoner commissary account to someone outside the prison. Gahl informed Mrs. DeLong and her attorney, Paula Kight, of the transfers. DeLong then obtained a writ of attachment against the plaintiff's commissary account based on an affidavit alleging that Kimberlin was sending $125 a month to a civilian outside the prison.

On appeal Kimberlin makes several arguments. First, he argues that the routine use exception in the Privacy Act does not apply for two reasons: (a) there is an implicit requirement therein that the law enforcement official be acting within his or her duty to the courts; and (b) a probation officer is not a "law enforcement official." Second, he contends that the *Bivens* actions are viable because the communication violated his constitutional rights.

## II. THE PRIVACY ACT

■ Congress enacted the Privacy Act, 5 U.S.C. § 552a, in order to protect the privacy of personal and financial data maintained in federal information systems. The Act regulates the "collection, maintenance, use, and dissemination of information by such agencies." Statement of Purpose, Act of Dec. 31, 1974, Pub.L. No. 93–579, § 2, 88 Stat. 1896. The Inmate Commissary Account Records System is such an informational system protected by the Privacy Act.[2] Therefore, unless the information falls into the category of the routine use exception of 5 U.S.C. § 552a(b)(3), a written consent is required before disclosure or use. 5 U.S.C. § 552a(b).

A routine use is defined as the use of a record compatible with its collection purpose. 5 U.S.C. § 552a(a)(7). The Bureau of Prisons has published a list of routine uses of the Inmate Commissary Account System[3] in the federal register pursuant to 5 U.S.C. § 552a(e)(4)(D). As shown in note 3, this includes (d) "to provide information source to state and federal law enforcement officials for investigations, possible criminal prosecutions, *civil court actions*, or regulatory proceedings" (emphasis added). If the dissemination from Leddy to Gahl falls within this routine use exception, then no Privacy Act violation occurred. Plaintiff advances two arguments for the inapplicability of the exception. First, he asserts that the routine use exception carries an implicit requirement that the law enforcement official act within the scope of his or her official duties. Second, he asserts that a probation officer such as defendant Gahl is not a "law enforcement official" for purposes of this exception.

### A. *Implicit Duty*

■ The plaintiff points to the list of routine uses published by the Bureau (see *supra* note 3) to support his contention that

2. Information systems can be exempted from the civil remedies section of the Privacy Act, 5 U.S.C. § 552a(g), pursuant to § 552a(j). However, as noted by the district court, the exemption listed for the inmate commissary account does not apply here. See 605 F.Supp. at 82.

3. The allegedly pertinent routine uses listed for the Inmate Commissary Account System are:

* * * (c) to provide information source to officers and employees of the Department of Justice who have a need for information in the performance of their duties; (d) to provide information source to state and federal law enforcement officials for investigations, possible criminal prosecutions, civil court actions, or regulatory proceedings.

the information must be necessary for the performance of the law enforcement officer's duties. Plaintiff then states that because he was not on parole or probation defendant Gahl had no duties toward Kimberlin as a probation officer, so that the information was not needed by Gahl. The plaintiff reads too much into subsection (d) of the routine use list. It is true that subsection (c), not applicable here (see 605 F.Supp. at 83), explicitly requires that employees of the Department of Justice need the information in performance of their duties before that routine use applies. However, there is no such requirement in subsection (d). Instead of a duty requirement, subsection (d) goes on to limit explicitly the uses of the information for law enforcement officials (*e.g.*, investigations, possible criminal prosecutions, civil court actions, or regulatory proceedings) whereas subsection (c) does not provide for specific uses. Thus, unlike subsection (c), subsection (d) restricts the use of information obtained from the Inmate Commissary Account System to particular legal proceedings and a duty requirement is unnecessary under that subsection. We reject the plaintiff's argument that the disclosure must be pursuant to a specific "duty" of the law enforcement official under subsection (d).

## B. Law Enforcement Official

The plaintiff also argues that a probation officer is not a "law enforcement official" and thus the disclosure to Gahl does not come within subsection (d) of the routine use exceptions listed in note 3 *supra*. The Privacy Act does not define "law enforcement official," although it does include probation officers in a general exemption section when it refers to "any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2). A probation officer is clearly a law enforcement official as the term is ordinarily used. A probation officer, either under the direction of the court or the Parole Commission, performs law enforcement-related functions. For example, a probation officer has an obligation to report to the court on the conduct of the probationer and en-

sure that he or she is abiding by the terms of probation and thus is expected to keep informed about such persons. 18 U.S.C. § 3655. A probation officer's job is to assist the court and criminal justice system in the rehabilitation of offenders. As such he or she is required to inform the court when the probationer violates the law or fails to pay fines or restitution. *Id.* A probation officer also has a limited power to arrest and issue bench warrants. *Id.; Cabell v. Chavez-Salido*, 454 U.S. 432, 445, 102 S.Ct. 735, 743, 70 L.Ed.2d 677 (probation officers "partake of the sovereign's power to exercise coercive force over the individual"). As the Supreme Court recently noted, a probation officer "is a peace officer, and as such is allied to a greater or lesser extent with his fellow peace officers." *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (quoting *Fare v. Michael C.*, 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197). A probation official, functioning as an arm of the criminal justice system, clearly assists in the enforcement of the criminal laws.

Kimberlin argues that Gahl was not a law enforcement official as to plaintiff because he was in prison, not on probation, and therefore Gahl had no supervisory power over him. This argument is unpersuasive for several reasons. First, Gahl was directly involved in Kimberlin's case. He prepared the pre-sentence reports after Kimberlin's criminal conviction. Also, he was the individual to contact the MCC to inform them of the civil judgment obtained by Mrs. DeLong against Kimberlin. Thus, although not under Gahl's direct supervisory power as a probation officer, Kimberlin's case was being handled by Gahl pursuant to his work in the court system. Second, routine use exception subsection (d) (see *supra* note 3) does not require that the law enforcement official be acting within the scope of his or her duties. So to interpret the exception would limit its application immeasurably. To follow plaintiff's logic, only prison officials could communicate with other prison officials because they are the only law enforcement officials

with direct supervisory power over Kimberlin while he is in prison. Obviously, the routine use exception was to have greater applicability, especially given the broad coverage of legal proceedings (investigations, criminal, civil, and regulatory proceedings). We approve the district court's finding that Gahl was a law enforcement officer within the meaning of the Inmate Commissary Account System list of routine uses.

## III. *BIVENS* ACTION

█ Kimberlin's complaint further alleges that Gahl's disclosure of the information to DeLong and her attorney, Kight, violated his rights to due process and privacy under the Constitution. See *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. Plaintiff frames his issue by claiming that Gahl "abused and misused his position [as a federal probation officer] to reveal constitutionally protected information about Plaintiff without seeking his permission or even giving notice to him" (Br. 20). To restate his argument, the failure to give notice or obtain consent to disclose violated a due process property right and the revelation itself violated a privacy right.

### A. Due Process

Kimberlin's claim to a property interest is totally lacking in merit. The only cognizable property interest at stake here is the loss of the money or use of the money in the commissary account.[4] But Kimberlin does not challenge the subsequent attachment of the funds or the process by which that occurred.[5] Instead Kimberlin argues that the due process "violation occurred at the very moment Gahl disclosed the information to DeLong/Kight" (Br. 22). However, there was no property deprivation at the time of this disclosure. Kimberlin still

had full access to and use of all the funds in his account.

### B. Privacy Interest

Kimberlin next contends that the disclosure from Gahl to Kight and DeLong violated his right to privacy. The exact nature and scope of informational privacy rights have never been fully developed. The Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, recognized a constitutional interest "in avoiding disclosure of personal matters." See also *id.* at 606, 97 S.Ct. at 880 (broad dissemination by government officials of drug prescription information would clearly implicate constitutionally protected privacy rights) (Brennan, J., concurring); *Barry v. New York*, 712 F.2d 1554, 1558 (2d Cir. 1983), certiorari denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723. Whether or not Kimberlin has a privacy interest in the information pertaining to his inmate commissary account depends upon whether he has a reasonable expectation of privacy in the information. *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867; *Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir.1978), certiorari denied, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90. Kimberlin claims that his expectation of privacy stems from the Privacy Act itself, which guarantees that the information will not be disclosed absent consent. While this argument may be persuasive in a general context, on the facts of this case it is untenable. First, the disclosure from Leddy to Gahl was done pursuant to a routine use exception and thus was not improper. Second, the disclosure from Gahl to DeLong and Kight was also in conformance with the use exception. Subsection (d) allows for the fund to be used as an information source to law enforcement officials for purposes including use in civil

---

**4.** We disagree with the district court's opinion to the extent that it holds the future actual loss of the money is the only property interest involved. The loss of the use of the money through attachment could also implicate a property interest. *Campbell v. Miller*, 787 F.2d 217, 222–23 (7th Cir.1986). But for the reasons noted below, plaintiff has not sufficiently alleged a due process violation with respect to the attachment.

**5.** Arguably since no due process violation occurred at the attachment proceeding itself, the disclosure cannot be said to have violated any due process interest in the money. *Campbell*, at 223.

court actions (see *supra* note 3). Accordingly, Kimberlin could not reasonably expect that the commissary account information would not be used in related civil actions. Because the account was maintained pursuant to the exceptions under the Privacy Act, and because both Leddy and Gahl acted in accordance with the routine use provision, Kimberlin had no expectation of privacy in this disclosure.[6] See *Whalen*, 429 U.S. at 605, 97 S.Ct. at 879 (statutory scheme evidences a proper concern with and protection of the individual's interest in privacy).

## IV. *BIVENS* CONSPIRACY CLAIM

Because of our Part III disposition of the substantive *Bivens* claims, we do not address the merits of plaintiff's contention that the defendant individuals conspired to violate his constitutional rights.

## V. CONCLUSION

For the reasons discussed above, the order of the district court dismissing plaintiff's action is affirmed.

---

**6.** Therefore we do not address the district court's conclusion that keeping of the account was "disclosure to outsiders" as a basis for holding that Kimberlin had no expectation of privacy in the information. Although prisoners give up certain rights upon confinement, see *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Privacy Act belies the presumption that prisoners have generally lost their right to privacy in the information within the commissary account. See also *Whalen*, 429 U.S. at 605, 97 S.Ct. at 879.