**Dominic MARCHESE,**
**Plaintiff-Appellant,**

v.

**SHEARSON HAYDEN STONE, INC.,**
**Defendant-Appellee.  (Two Cases)**

Nos. 85–6098, 86–6416.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1987.

Decided July 21, 1987.

David Daar, Jeffery J. Daar, Los Angeles, Cal., for plaintiff-appellant.

Armando T. Belly, New York City, for defendant-appellee.

Mary L. Schapiro, Marshall E. Hanbury, Whitney Adams and Joel R. Maillie, Washington, D.C., for amicus curiae.

Before ALARCON and O'SCANNLAIN, Circuit Judges, and REED,* District Judge.

O'SCANNLAIN, Circuit Judge:

In 1978 Marchese initiated this class action suit against Shearson Hayden Stone, Inc. ("Shearson"), seeking a declaratory judgment that futures commission merchants (colloquially called commodity brokers, but referred to here as FCMs) are prohibited by section 4d of the Commodity Exchange Act ("Act"), 7 U.S.C. § 6d (1982), from retaining interest earned on margin

---

* Honorable Edward C. Reed, Jr., United States District Judge, District of Nevada, sitting by

designation.

funds deposited by their customers who speculate in futures trading. After many procedural issues were disposed of, including a prior appeal to this court (*Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414 (9th Cir.1984)), the district court dismissed Marchese's complaint for failure to state a claim.[1] *Marchese v. Shearson Hayden Stone, Inc.*, 644 F.Supp. 1381 (C.D.Cal. 1986). Because Judge Byrne's well reasoned order granting the motion to dismiss carefully describes the facts of this case and accurately reviews the legislative and administrative history of the issue, we refer to his opinion for background information rather than recapitulating it here. We have reviewed the district court's dismissal and interpretation of section 4d *de novo, In re Benny,* 812 F.2d 1133, 1140 (9th Cir. 1987); *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 552 (9th Cir. 1984), and we affirm it for the following reasons.

■ Section 4d of the Commodity Exchange Act, as amended, expressly provides that margin funds are the property of the customer, not the FCM, but the Act is silent on the issue of interest or increment that may be earned on those funds.[2] Significantly, however, a regulation promulgated under the authority of the Act explicitly allows FCMs to retain any interest resulting from the investment of margin funds. 17 C.F.R. § 1.29 (1986).[3] This regulation was first issued in 1937, and Congress has reviewed, amended, and reauthorized the Act several times since then without commenting on the issue of margin interest.[4] Moreover, the administrative agencies responsible for implementing the Act have been consistent in their interpretation of regulation 1.29 through the years, allowing FCMs to retain any interest earned on margin funds invested.[5]

Marchese correctly notes that this case presents an issue of first impression in this circuit. Other circuits, however, have considered the issue, and there has been no conflict in their interpretations of the statute and its attendant regulations. *See Craig v. Refco, Inc.,* 816 F.2d 347, 348 (7th Cir.1987) (per curiam) ("regulation 1.29 ... permits the broker to keep the interest earned"); *Crabtree Investments, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 577 F.Supp. 1466, 1473 (M.D.La.) ("[a]

1. In this appeal, Marchese initially challenged the district court's minute entry (filed June 28, 1985), indicating that the court would grant Shearson's motion to dismiss. That appeal was docketed as No. 85–6098. Marchese later appealed the district court's order granting dismissal (filed Sept. 11, 1986), and that appeal was docketed as No. 86–6416. The appeals were consolidated for review, and this opinion disposes of them both.

2. Section 4d(2) provides, in pertinent part, that an FCM shall

treat and deal with all money, securities, and property received by such [FCM] to margin, guarantee, or secure the trades or contracts of any customer of such [FCM], or accruing to such customer as the result of such trades or contracts, as belonging to such customer. Such money, securities, and property shall be separately accounted for and shall not be commingled with the funds of such commission merchant or be used to margin or guarantee the trades or contracts, or to secure or extend the credit, of any customer or person other than the one for whom the same are held: ... *Provided further* That such [margin] money may be invested in obligations of the United States, in general obligations of any

State or of any political subdivision thereof, and in obligations fully guaranteed as to principal and interest by the United States, such investments to be made in accordance with such rules and regulations and subject to such conditions as the Commission may prescribe.

3. The current version of regulation 1.29 reads in full:

The investment of customer funds in obligations described in § 1.25 [specifying the types of investments permitted] shall not prevent the futures commission merchant or clearing organization so investing such funds from receiving and retaining as its own any increment or interest resulting therefrom.

4. *See* Pub.L. No. 90–258, 82 Stat. 26 (1968); Commodity Futures Trading Commission Act, Pub.L. No. 93–463, 88 Stat. 1389 (1974); Futures Trading Act of 1982, Pub.L. No. 97–444, 96 Stat. 2294 (1982); Futures Trading Act of 1986, Pub.L. No. 99–641, 100 Stat. 3556 (1986).

Congress amended section 4d(2) in 1968 and 1978, but it did not address the issue of interest earned on margin deposits. *See Marchese,* 644 F.Supp. at 1389–90.

5. *See Marchese,* 644 F.Supp. at 1387, n. 16.

futures commission merchant is permitted to retain interest from the authorized investment of customer funds"), *aff'd mem.*, 738 F.2d 434 (5th Cir.1984). We find these cases persuasive, and we reject Marchese's contention that they are not on point.

■ We also reject Marchese's argument that Shearson violated its duties as a common law trustee by appropriating margin interest without customer consent. The legislative history of the Act makes it clear that section 4d establishes a specific statutory trust, as opposed to a common law trust, and this fact has long been recognized.[6]

Although Congress has been silent on the issue of who may claim the interest earned on margin funds deposited in commodity futures accounts, the agency vested with authority to prescribe regulations has spoken forthrightly. We find the language of 17 C.F.R. § 1.29 unambiguous, and we note that the position of the responsible agency on this issue has been consistently followed for fifty years. Congress may choose to address this question directly in the future, but for now it is proper for this court to presume that Congress was aware of the existing administrative regulations and interpretations each time it reauthorized the Act. *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982).

AFFIRMED.

---

**6.** *See* H.R.Rep. No. 1637, 73rd Cong., 2d Sess. 40–41 (1934) (rejecting implication of common law trust in section 4d); "regulation 1.29 does permit the [FCM] to retain all profits on such investments for himself ... in contrast to traditional trust law," Opinion of the Solicitor, Commodity Exchange Authority (Sept. 11, 1941).