Lawrence Newmark, J.
Defendants move for an order dismissing the complaint on the ground that it does not set forth a cause of action.
The complaint would appear to be grounded on invasion of privacy and intentional or negligent infliction of emotional distress. For the purpose of this motion, it makes no difference whether the alleged emotional distress was intentional or not. In addition, the complaint seeks to reinforce whatever duty the defendants may have to respect the confidence by alleging a fiduciary relationship between plaintiffs and defendants.
The invasion of privacy theory can be dismissed quickly. New York law, even though contrary to the law of many other jurisdictions, is very clear that no actionable remedy exists at common law for invasion of privacy. (Roberson v. Rochester Folding Box Co., 171 N. Y. 538 [1902]. See, also, 47 N. Y. Jur., Privacy, § 2, p. 5.)
Shortly following this decision and in response to it, the Legislature enacted two invasion of privacy statutes, sections 50 and 51 of the Civil Bights Law. However, these laws prohibit merely the commercial exploitation of a person’s name, portrait or picture without written consent, and the line of decisions under these sections have invariably confined their applicability to such commercial situations.
With respect to the second possible gravamen of liability— infliction of emotional distress ■ — the law is likewise unequivocal in that an action can lie for ‘ ‘ injuries, physical or mental, *249 incurred by fright negligently induced (Battalla v. State of New York, 10 N Y 2d 237 [1961, overruling Mitchell v. Rochester Ry. Co., 151 N. Y. 107].) And several months later, the Appellate Division, Second Department, ruled that there may be recovery for the intentional infliction of mental distress without proof of the breach of any duty other than the duty to refrain from inflicting it. (Halio v. Lurie, 15 A D 2d 62 [1961] [headnote 2].) The court further stated that such infliction, without any physical impact, can constitute an independent tort which is actionable per se, i.e., without any allegation of special damages.
At this point, it may be helpful to distinguish between the intentional tort allegedly inflicted on the infant plaintiff Judith Blair, and that said to have been committed against the parents, James and Leona Blair. The act of defendants in either case was the same- — • divulgence of confidential information. Clearly, the tort was inflicted, if at all, only on the daughter, Judith. The complaint contains no allegation that the secret information revealed concerned anyone but Judith. Hence, the alleged mental suffering of the parents was derivative of a sort, having been occasioned by a tort committed on their daughter.
Recovery for such “ third party mental distress ” has been denied where the underlying tort was negligence. In Tobin v. Grossman (24 N Y 2d 609 [1969]) a personal injury action was brought by the mother of an infant for mental distress suffered by her in witnessing her child hit by a car. In striking the mother’s cause of action, the court recited the following factions as among those influencing its decision: the unforeseeability of the injury and the difficulty of circumscribing the area of liability.
Regarding the reasonable circumscription of liability, the court observed: “ Again, the logical difficulty of excluding the grandparent, the relatives, or others in loco parentis, and even the conscientious and sensitive caretaker, from a right to recover, if in fact the accident had the grave consequences claimed, raises subtle and elusive hazards in devising a sound rule in this field.” (Tobin v. Grossman, supra, p. 617.)
Although the tort alleged here is an intentional one, the same reasoning is applicable. If the number of plaintiffs were not limited to Judith Blair and her parents, but included other members of her family and close friends, where would the court draw the line on persons injured? Or, to ask it another way, could the court hold that, as a matter of law, the mental distress of the parents of a girl over some injury to her would *250 be greater than the mental distress of a sister near her age, or of her closest friend?
Another factor that should be considered is that the underlying tort alleged against the daughter Judith was not any physical injury, evidenced by bleeding, broken limbs or other macabre sights which might very well stir feelings of revulsion and shock. Bather, the parents here allege the injury of mental distress based on the mental distress inflicted on their daughter.
The instant question, then, distills down to whether the conduct of the defendants alleged in the complaint could be deemed sufficient, as a matter of law, to induce mental distress in the plaintiff Judith Blair.
In the case of Halio v. Lurie (15 A D 2d 62, supra) which established mental distress as actionable per se, the court found the facts to be as follows: “ (P)laintiff and defendant had been keeping company for about two years with a view to their ultimate marriage; that while they were still doing so, defendant married another woman without plaintiff’s knowledge, and concealed the marriage from the plaintiff, who discovered it only by accident; that the relations between the parties then ceased, and that defendant thereafter composed and mailed to plaintiff, in an envelope addressed to Mrs. Vicky Halio, a communication in verse entitled ‘ An Ode to Vicky ’ in which he referred to her as ‘ The tortured Turk,’ taunted her with her unsuccessful efforts to marry him, intimated that she had made a false claim that he was under an obligation to marry her, declared that he had avoided marriage to her because he was ‘ wise to her game,’ and expressed the view that through the coming years she would be the object of derision and the subject of amusement, on the part of his wife and himself, by reason of her ‘ phone calls galore ’ (presumably to complain that she had not accomplished her purpose to marry him).” (Halio v. Lurie, supra, pp. 63-64.)
In Scheman v. Schlein (35 Misc 2d 581 [Supreme Ct., N. Y. County, 1962]) a landlord was accused of harassing his tenants in order to get them to vacate their apartment. The course of conduct alleged included: giving possession of the apartment directly above these tenants’ apartment to the landlord’s daughter and son-in-law so that they could — and did — create noise and disturbances, particularly in the late hours; and threats of litigation against the tenants unless they consented to a rent increase. It was also alleged that the landlord knew that one of the tenants had had a stroke and was in poor health.
*251 In Flamm v. Van Nierop (56 Misc 2d 1059 [Supreme Ct., Westchester County, 1968]) the mental and emotional distress upheld was brought on by the fact that the defendant: 11 Dashed at the plaintiff in a threatening manner in various public places, with ‘ threatening gestures, grimaces, leers, distorted faces and malign looks, ’ accompanied by 1 ridiculous utterances and laughs ’; driven his automobile behind that of the plaintiff at a dangerously close distance; walked closely behind, or beside, or in front of the plaintiff on the public streets; and constantly telephoned the plaintiff at his home and place of business and either hung up or remained on the line in silence.” (Flamm v. Van Nierop, supra, p. 1060.) The court in Flamm emphasized that conduct, which is actionable, is distinguished from that which is not, by a degree of difference. The court then cited Halio v. Lurie (supra) as an example of the “extreme and outrageous conduct” which can be actionable.
On the other side of the coin, there is precedent for dismissing a complaint in mental distress for failure to state a cause of action; the Appellate Division did so in Kalina v. General Hosp. of City of Syracuse (18 A D 2d 757 [4th Dept., 1962, affd. 13 N Y 2d 1023]). The hospital was charged with participating, aiding and assisting in a circumcision operation upon plaintiffs’ son by a doctor who was not qualified to perform such an operation under plaintiffs’ religious laws and who did not observe the prescribed religious ritual. It was also established that the hospital had been informed that the child was to have been circumcised in a ritualistic ceremony in accordance with the religion. The Supreme Court of Onondaga County entered an order dismissing the complaint, which the Appellate Division affirmed without opinion. It should be noted, however, that the lower court dismissed the complaint on the grounds that damages for mental distress arising out of an assault are recoverable only by the person assaulted (31 Misc 2d 18).
In connection with the case at bar, it is interesting to note the recent comments of the Court of Appeals on both invasion of privacy and intentional infliction of emotional distress, in Nader v. General Motors Corp. (25 N Y 2d 560 [1970]). The avenue to discussion of the tort of invasion of privacy was opened by the court’s determination that the substantive law of the District of Columbia was controlling, and that jurisdiction recognizes such a cause of action.
The alleged acts of the defendant complained of included: “ (1) conducted a series of interviews with acquaintances of *252 the plaintiff, ‘ questioning them about, and casting aspersions upon [his] political, social- * * * racial and religious views * * *; his integrity; his sexual proclivities and inclinations; and his personal habits ’ * * * (2) kept him under surveillance in public places for an unreasonable length of time * * * (3) caused him to be accosted by girls for the purpose of trapping him into illicit relationships * * * (4) made threatening, harassing and obnoxious telephone calls to him * '* * (5) tapped his telephone and eavesdropped, by means of mechanical and electronic equipment, on his private conversations with others * * * and (6) conducted a ‘ continuing ’ and harassing investigation of him”. (Nader v. General Motors Corp., supra, p. 564.)
The court began its discussion by noting that the District of Columbia Courts ‘1 have not only recognized a common-law action for invasion of privacy but have broadened the scope of that tort beyond its traditional limits ” (Id., p. 565). The New York Court of Appeals went on to characterize the right of privacy as: “ one’s right to keep knowledge about oneself from exposure to others, the right to prevent ‘ the obtaining of the information by improperly intrusive means ’ * * *. It should be emphasized that the mere gathering of information about a particular individual does not give rise to a cause of action under this theory. Privacy is invaded only if the information sought is of a confidential nature and the defendant’s conduct was unreasonably intrusive. Just as a common-law copyright is lost when material is published, so, too, there can be no invasion of privacy where the information sought is open to public view or has been voluntarily revealed to others. =» * * In order to sustain a cause of action for invasion of privacy, therefore, the plaintiff must show that the appellant’s conduct was truly ‘ intrusive ’ and that it was designed to elicit information which would not be available through normal inquiry or observation.” (Id., p. 567.) Later in its opinion, the court distinguished between a cause of action for invasion of privacy apd one for intentional infliction of mental distress. Finally, the court’s findings as to each of the six enumerated activities mentioned above were that three of them — the interviewing of plaintiff’s acquaintances, the accosting of girls, and the annoying and threatening telephone calls — were not sufficient, as a matter of law, to constitute invasion of privacy.
From the line of decisions, a fair consensus can be seen as to the type of conduct that will support a cause of action for intentional infliction of mental distress. The cases have looked *253 to such elements as “ extreme and outrageous ” behavior, vindictiveness, or a course of conduct of harassment and threats.
Dean Prosser sums up the essential elements of the tort in this language: “ So far as it is possible to generalize from the cases, the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.” (Prosser, Torts [3d ed.], ch. 2, § 11, p. 48.) See, also, Restatement, 2d, Torts (§ 46 [1965]), the headnote of which states:
“ § 46. Outrageous Conduct Causing Severe Emotional Distress (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ”.
Now we must turn our attention to the conduct alleged in the complaint in the instant case, and match it against the standards of conduct found in the decision and authorities cited.
The sum of the causes of action is that the plaintiffs Judith Blair and her mother Leona Blair gave confidential statements, the nature of which is unknown, to the police and to school officials, the contents of which were leaked to the general public. As for the father, James Blair’s cause of action, it says that the alleged divulgence of the contents of the confidential statements made him sell his house and move.
If there was no special relationship between the plaintiffs and the defendants and if the alleged disclosure was willful, such action might be characterized as imprudent, thoughtless, or — more harshly — unkind or unfeeling. But could you say it was, “ outrageous,” or that it transcends the boundaries of decency generally recognized by society í A cause of action cannot lie each time someone succumbs to the temptation to break a confidence and whisper a juicy rumor. There is no indication in the prior decisions that the phrase, “intentional infliction of mental distress,” was ever meant to reach such situations.
The case at bar, however, is not the normal situation relating to infliction of mental distress, since the complaint alleges a fiduciary relationship. Although the relationship between student and a student’s family with a .school and its professional employees probably does not constitute a fiduciary relationship, it is certainly a special or confidential relationship. In order for the educational process to function in an effective manner it is patently necessary that the student and the student’s family be free to confide in the professional staff of the school with the assurance that such confidences will be respected. The act *254 of the school or. its employees, in divulging information given to a school in confidence, may well constitute outrageous, actionable conduct in view of the special or confidential relationship existing between a student and his family with the school and its professional employees.
“A ‘ confidential relationship ’ may be described as a relation arising out of a close and intimate association which creates and inspires trust and confidence between the parties so associated.” (N. Y. Jur., Words and Phrases, p. 149.)
The pleadings do not recite the information disclosed by the defendants and indeed, need not do so. However, it will remain for the trial to determine if the precise disclosure which may have been made by the defendants meets the standards which justify a judgment for the plaintiffs.
The motion is denied.