**Mark SOUCIE, Gregg Soucie, and Virginia Soucie, Plaintiffs,**

v.

**COUNTY OF MONROE, County of Monroe Probation Department, Laura Dennany, individually and in her official capacity, and Vicky Tanzi, Defendants.**

No. CIV–89–1301T.

United States District Court,
W.D. New York.

April 24, 1990.

James J. Piampiano, Rochester, N.Y., for plaintiffs.

Mark C. Davison, Asst. County Atty., Rochester, N.Y., for defendants County of Monroe & Dennany.

Nira T. Kermisch, Rochester, N.Y., for defendant Tanzi.

## DECISION and ORDER

TELESCA, Chief Judge.

Plaintiffs Mark Soucie, Gregg Soucie, and Virginia Soucie commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants unlawfully disseminated and publicized confidential youthful offender information contained in a pre-sentence report. Defendants County of Monroe, County of Monroe Department of Probation and Laura Dennany now move to dismiss plaintiffs' complaint. Defendant Tanzi seeks a vacatur of an earlier entry of default, and a similar order of dismissal. For the reasons discussed below, I find that plaintiffs Gregg and Virginia Soucie, as parents, lack standing to join in this action and that the remainder of Mark Soucie's complaint must be dismissed except with respect to his § 1983 claim against Laura Dennany individually.

In June of 1987, Virginia and Mark Soucie provided personal information to the Monroe County Probation Department in compliance with its pre-sentence investigation of Mark Soucie, a then youthful offender. This information was subsequently incorporated into Mark Soucie's pre-sentence report and placed on file with the

County. Under New York law, such a record is considered "confidential" and may not be made available to the public except "by statute or specific authorization of the court." N.Y.Crim.Prac. Law § 720.35 (McKinney 1984).

The plaintiffs allege, however, that defendant Laura Dennany, while an employee of the County, "deceptively" obtained and "maliciously" disclosed the contents of the pre-sentence report without plaintiffs' knowledge or consent. The plaintiffs also claim that Laura Dennany revealed this information to her sister, defendant Vicky Tanzi, who then similarly publicized it.[1] The plaintiffs now allege a federal cause of action for violation of their constitutional right of privacy, as well as state law claims for intentional infliction of emotional distress, public disclosure of a private fact, and *per se* negligence for a statutory violation.

## DISCUSSION

### 1. *Standing*

■ Although not raised by the parties, the requirement of standing comprises an element of subject matter jurisdiction which the court may raise *sua sponte. Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 540–42, 106 S.Ct. 1326, 1330–32, 89 L.Ed.2d 501 (1986), *reh'g denied* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986). To have standing, a plaintiff must allege "(1) a personal injury in fact, (2) a violation of his or her own, not a third-party's, rights, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury." *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 606 (2d Cir.), *cert. denied,* ── U.S. ──, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472–74, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700

(1982)); *Seneca Falls School Dist. v. Liverpool School Dist.*, 728 F.Supp. 910, 912 (W.D.N.Y.1990).

■ In their complaint, the plaintiffs allege that they have suffered embarrassment and humiliation as a result of defendants' disclosure of confidential personal and family information contained in Mark Soucie's pre-sentence report. Without directly addressing the question of whether each of the plaintiffs has suffered the requisite injury in fact, it is clear that the claims of Virginia and Gregg Soucie do not fall within the zone of constitutionally protected privacy interests at issue here. As discussed more fully below, the plaintiffs' constitutional right of privacy claim is predicated in large part upon the statutory safeguards which prohibit public dissemination of information pertaining to youthful offender adjudications. *See* N.Y.Crim. Prac.Law § 720.35. These safeguards are designed solely to protect juveniles, and not their parents, from the social stigma of a prior criminal conviction. *United States v. Canniff,* 521 F.2d 565, 569 (2d Cir.1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976); *People v. Cruickshank,* 105 A.D.2d 325, 333, 484 N.Y.S.2d 328, *aff'd,* 67 N.Y.2d 625, 499 N.Y.S.2d 663, 490 N.E.2d 530 (1985); *People v. Cook,* 37 N.Y.2d 591, 595, 376 N.Y.S.2d 110, 338 N.E.2d 619 (1975). Accordingly, Virginia and Gregg Soucie lack standing to rely upon those provisions and the claims on their behalf are dismissed from this action.

### 2. *Right of Privacy*

■ It is by now well established that the Constitution accords individuals some right of privacy. *Nixon v. Administrator of General Services,* 433 U.S. 425, 455–65, 97 S.Ct. 2777, 2796–2801, 53 L.Ed.2d 867 (1977); *Whalen v. Roe,* 429 U.S. 589, 598–604, 97 S.Ct. 869, 875–879, 51 L.Ed.2d 64 (1977); *Igneri v. Moore,* 898 F.2d 870, 873 (2d Cir.1990). Although rather "difficult to articulate precisely," *id.*, this privacy right clearly protects at least two kinds of priva-

---

1. From representations made by Vicky Tanzi and by plaintiffs' counsel at oral argument, it appears that Ms. Tanzi dated Mark Soucie at about the time this cause of action arose. *See* Affidavit of Vicky Tanzi, ¶ 14.

cy interests: "[o]ne is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen*, 429 U.S. at 599–600, 97 S.Ct. at 876; *See also Nixon*, 433 U.S. at 457, 97 S.Ct. at 2797.

The plaintiff's privacy claim involving the unauthorized publication of youthful offender information is clearly predicated upon the first strand of this right. Whether the Constitution in fact protects against the type of disclosure alleged to have occurred here depends upon whether the plaintiff had a reasonable expectation of privacy in the information. *Nixon*, 433 U.S. at 458, 97 S.Ct. at 2797; *Kimberlin v. United States Dep't of Justice*, 788 F.2d 434, 438 (7th Cir.), *cert. denied*, 478 U.S. 1009, 106 S.Ct. 3306, 92 L.Ed.2d 719 (1986); *Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir. 1984); *Doe v. Webster*, 606 F.2d 1226, 1238 n. 49 (D.C.Cir.1979); *Plante v. Gonzalez*, 575 F.2d 1119, 1135 (5th Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047, 59 L.Ed.2d 90 (1979). This in turn depends upon the relevant statutory restrictions governing disclosure, *Kimberlin*, 788 F.2d at 438–39, as well as upon the nature of the information itself, *Whalen*, 429 U.S. at 605, 97 S.Ct. at 879.

Section 720.35(2) pertaining to the filing of "Youthful Offender Adjudication" reports provides in pertinent part:

Except where specifically required or permitted by statute or upon specific authorization of the court, all official records and papers, whether on file with the court, a police agency or the division of criminal justice services, relating to a case involving a youth who has been adjudicated a youthful offender, are confidential and may not be made available to any person or public or private agency, other than an institution to which such youth has been committed, the division of parole and a probation department of this state that requires such official records and papers for the purpose of carrying out duties specifically authorized by law.

N.Y.Crim.Prac.Law § 720.35(2). Construed broadly, *People v. J.K.*, 137 Misc.2d 394, 395–96, 520 N.Y.S.2d 986 (N.Y.Sup.Ct. 1987), this provision clearly provides ample ground upon which the plaintiff might reasonably believe that his pre-sentence disclosures would remain private.[2] The statute itself declares such information "confidential" and prohibits disclosure except for purposes of adjudication, parole and probation, correction, or where permitted by statute or court authorization.

The policies underlying youthful offender adjudications further support plaintiff's privacy expectations. Such proceedings are conducted in an atmosphere of confidentiality to ensure that juvenile defendants are not made to suffer the stigma and practical consequences which typically accompany criminal adjudication. *People v. Cook*, 37 N.Y.2d at 595, 376 N.Y.S.2d 110, 338 N.E.2d 619. This policy is particularly true, and the expectations of privacy all the more reasonable, during the pre-sentence investigation period when the youthful offender is encouraged to disclose the full nature of his personal and family history.

I find defendants' reliance on *Paul v. Davis*, 424 U.S. 645, 96 S.Ct. 1155, 47 L.Ed.2d 366 (1976), in this regard unpersuasive. In that case, the Supreme Court held that police circulation of the fact of respondent's arrest for shoplifting did not violate his constitutional right to privacy. The Court acknowledged that while "zones of privacy" created by more specific constitutional guarantees may impose limits upon governmental power, respondent's claim did not implicate "fundamental" personal privacy rights or those "implicit in the concept of liberty." *Id.* at 712–714, 96 S.Ct. at 1165–1167. The Court further stated:

The activities detailed as being within this definition ... [are] ones very different from that for which respondent claims constitutional protection—matters relating to marriage, procreation, contra-

---

**2.** For example, although § 720.35(2) refers to "all official records and papers," it affords the "same standard of confidentiality" to probation reports as to all other papers within the youthful offender file. *People v. J.K.*, 137 Misc.2d at 396, 520 N.Y.S.2d 986.

ception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the state's power to substantively regulate conduct ... [The respondent's] claim is based, not upon any challenge to the state's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the state may not publicize a record of any official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner. *Id.* at 713, 96 S.Ct. at 1166.

Were this the Supreme Court's last statement on this issue, I might be persuaded to adopt the defendants' position. One year later in *Whalen* and *Nixon*, however, the Court explicitly recognized that the right to privacy encompasses both an individual's interest in avoiding disclosure of personal matters, as well as those autonomy rights discussed in *Davis. See Whalen*, 429 U.S. at 599–601, 97 S.Ct. at 876–877; *Nixon*, 433 U.S. at 457–58, 97 S.Ct. at 2797–98. The Court in *Whalen*, in fact, indicated that the issue presented here remained open, warning that it did not "decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional." *Whalen*, 429 U.S. at 605–06, 97 S.Ct. at 879.

I am likewise unpersuaded by the defendant's reliance on the Sixth Circuit's decision in *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir.1981). In that case, a class of juvenile offenders sought to enjoin the juvenile court's statutorily permitted use of their social histories for purposes of probation on the grounds that it violated their constitutional right of privacy. Although acknowledging that *Whalen* and *Nixon* "somewhat clouded" the "otherwise dispositive effect of *Paul v. Davis*," *id.* at 1088, the Sixth Circuit nonetheless declined to construe a general constitutional right to privacy from what it perceived to be isolated statements in those cases, absent a

clearer indication from the Supreme Court. *Id.* at 1089. The Court expressed its concern that such a "vague" and "all-encompassing" notion of individual privacy is ultimately analytically indistinguishable from the general "right to be let alone" that Justice Brandeis once called for, but which has never been accepted by the Supreme Court. *Id.*

I find the Sixth Circuit's conclusion needlessly overbroad. By holding in favor of the plaintiff's privacy interests, I do not attempt to carve out such an expansive constitutional privacy right. *See DeSanti*, 653 F.2d at 1090 n. 5. The plaintiff's interest in non-disclosure of youthful offender information is predicated upon statutorily conferred expectations of privacy, and is thus well-founded and to a large extent defined by Fourth Amendment privacy notions.[3] Thus, I do not agree that my holding today somehow forces an inquiry any more difficult than that required with other recognized constitutionally protected privacy interests. *Cf. Osborne v. Ohio*, — U.S. ——, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (suggesting First Amendment privacy right to read and observe what one pleases in privacy of own home, absent "compelling" state interests to the contrary (citing *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), *United States v. 12200–Ft. Reels of Super 8 MM. Film*, 413 U.S. 123, 126–28, 93 S.Ct. 2665, 2667–69, 37 L.Ed.2d 500 (1973))); *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) (various Bill of Rights provisions create "zones of privacy," including Fifth Amendment's Self Incrimination Clause which creates zone of privacy protecting individual against compulsory and prejudicial surrender). To the extent that other courts may have reached a contrary result, I decline to follow their reasoning. *See, e.g., McCrary v. Jetter*, 665 F.Supp. 182, 186 (E.D.N.Y.1987) (youthful offender has no privacy right in picture contained in file).

---

**3.** To an extent, this alleviates one of the Sixth Circuit's criticisms in *DeSanti* that "of the cases cited holding that there is a constitutional right of privacy, none cites a constitutional provision in support of its holding." 606 F.2d at 1090.

### 3. *Liability of the County Defendants*

■ It is well settled that municipalities may not be held liable under § 1983 for the unconstitutional acts of their employees solely on a theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir.1989). For the municipality to be held liable, the plaintiff must show that the constitutional deprivation was caused by a municipal custom or policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–79, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Only in such a case can it be said that the municipality itself is responsible for, and the "moving force [behind] the constitutional violation." *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2038, *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)).

The plaintiff alleges that the County is responsible for the constitutional deprivation here because it failed to adequately train Laura Dennany as to the confidentiality of juvenile pre-sentence reports. The county may be held liable under such a "failure to train" theory only where its policymakers adopted or maintained training practices which they knew or clearly should have known were inadequate with respect to the tasks assigned. *City of Canton,* 109 S.Ct. at 1205–06. It is therefore not enough to show mere inadequacy. The need for more or different training must have been "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the ... [County] can reasonably be said to have been deliberately indifferent to the need." *Id.* at 1206. *See also id.* at n. 10. Under such circumstances, the failure to provide proper training amounts to an actionable munici-

pal "policy" or "custom" for which the County is responsible, and for which it may be held liable if it causes injury. *Id.* at 1206.

Even construing the pleadings in a light most favorable to the plaintiff, his claims against the County clearly fail to satisfy this burden. The plaintiff does not allege that the County has repeatedly ignored or failed to investigate prior illicit disclosures by its probation personnel, *Gardner,* 891 F.2d at 1045; *Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987), nor does he point to any other facts outside his own case supporting his claims of a municipal policy or custom, *Thurman v. City of Torrington,* 595 F.Supp. 1521, 1530 (D.Conn.1984). Instead, he relies upon only one such disclosure, and that incident involved an actor below the policymaking level. Such allegations will generally "not suffice to raise an inference of the existence of a custom or policy," *Gardner,* 891 F.2d at 1045, especially where they involve intentional and malicious misconduct of which the County had no prior notice. Accordingly, the plaintiff's § 1983 claim against the County defendants and Laura Dennany in her official capacity is dismissed. *Will v. Michigan Dep't of State Police,* — U.S. —, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham,* 473 U.S. 159, 165–167, 105 S.Ct. 3099, 3104–3106, 87 L.Ed.2d 114 (1985).[4] Absent this independent federal basis for jurisdiction, plaintiff's state law causes of action against these defendants must be dismissed as well. *Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 2006–2007, 104 L.Ed.2d 593 (1989) (pendent parties require independent jurisdictional basis).

### 4. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

■ In the second cause of action, plaintiff alleges that the defendants Laura Den-

---

**4.** Because the County defendants are dismissed from this action, I need not address the conflict of interest question presented by the County attorney's joint representation of both the County and Laura Dennany. *See Dunton v. County of Suffolk,* 729 F.2d 903, 907–910 (2d Cir.1984) (After *Monell,* interest of a municipality and its employees as defendants in § 1983 actions are in conflict).

nany and Vicky Tanzi, individually, revealed the contents of his pre-sentence report with the intent to inflict emotional distress upon plaintiff. To succeed on this claim, plaintiff must show that the defendants' behavior amounted to "extreme and outrageous" conduct which intentionally or recklessly caused severe emotional distress. *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 139, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985).

Even construing the pleadings in the plaintiff's favor, the allegations against defendant Tanzi fail to state a claim upon which relief can be granted. New York courts have sustained claims of this type only where the publication of confidential material was committed in breach of an express or implied duty not to disclose. *See, e.g., Blair v. Union Free School Dist.*, 67 Misc.2d 248, 253–54, 324 N.Y.S.2d 222 (Suffolk Cty.1971). Ms. Tanzi cannot be said to have been bound by any such duty of non-disclosure. She neither received the information as the result of a confidential relationship with the plaintiff, nor was she, like her sister, statutorily obligated to preserve its secrecy once she obtained it. *Id.* at 254, 324 N.Y.S.2d 222; *cf. Freihofer*, 65 N.Y.2d at 142, 490 N.Y.S.2d 735, 480 N.E.2d 349; *Shiles v. News Syndicate Co.*, 27 N.Y.2d 9, 313 N.Y.S.2d 104, 261 N.E.2d 251 (1970), *cert. denied*, 400 U.S. 999, 91 S.Ct. 454, 27 L.Ed.2d 450 (1971); *Danziger v. Hearst Corp.*, 304 N.Y. 244, 107 N.E.2d 62 (1952). Accordingly, I hereby vacate the entry of default against defendant Tanzi and dismiss plaintiff's second cause of action against her.

The second cause of action is time barred as against defendant Dennany. The statute of limitations for a claim of intentional infliction of emotional distress is one year from the date of last publication. N.Y.Civ. Prac.L. & R. § 215(3) (McKinney 1972); *Jemison v. Crichlow*, 139 A.D.2d 332, 336, 531 N.Y.S.2d 919 (2d Dep't 1988), *aff'd*, 74 N.Y.2d 726, 544 N.Y.S.2d 813, 543 N.E.2d 78 (1989); *Clark v. N.Y. Telephone Co.*, 52 A.D.2d 1030, 384 N.Y.S.2d 562 (4th Dep't 1976), *aff'd*, 41 N.Y.2d 1069, 396 N.Y.S.2d 177, 364 N.E.2d 841 (1977); *Perritano v. Perone*, 130 A.D.2d 472, 473, 515 N.Y.S.2d 55 (2d Dep't 1987). As Ms. Dennany's last disclosure is alleged to have occurred no later than September 10, 1987, the plaintiff's second cause of action against her is time barred and must be dismissed.

### 5. *Plaintiff's Remaining State Law Causes of Action*

Plaintiff's remaining state law claims for public disclosure of a private fact and *per se* negligence for a statutory violation are either unsustainable on the facts alleged or simply unactionable. *See Freihofer*, 65 N.Y.2d at 140, 142, 490 N.Y.S.2d 735, 480 N.E.2d 349 (right of privacy actions limited to N.Y.Civ.Rights Law §§ 50, 51 even where statutorily designated confidential material involved). Despite plaintiff's invitation to the contrary, I decline to construe state law in a manner unsupported by clear precedent. *See Robison v. Via*, 821 F.2d 913, 925 (2d Cir.1987) (district courts exercising pendent jurisdiction should avoid " 'needless decisions of state law' " as a matter of comity and to ensure a " 'surer-footed reading of applicable law.' ") (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)). Accordingly, plaintiff's third and fourth causes of action are dismissed as well.

### SUMMARY

Because Gregg and Virginia Soucie, as parents, lack standing to bring this action, claims on their behalf are dismissed; Mark Soucie's § 1983 claim is dismissed as against all defendants except Laura Dennany in her individual capacity and his state law claims are dismissed in their entirety.

ALL OF THE ABOVE IS SO ORDERED.