**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                    No. 98-4423

T.E.S., A Male Juvenile,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-98-7-WMN)

Argued: September 24, 1998

Decided: November 6, 1998

Before LUTTIG and MOTZ, Circuit Judges, and
BULLOCK, Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Motz concurred
only in the judgment.

_____

**COUNSEL**

**ARGUED:** Michael Daniel Montemarano, MICHAEL D. MONTE-
MARANO, P.A., Baltimore, Maryland, for Appellant. Robert Reeves
Harding, Assistant United States Attorney, Baltimore, Maryland, for
Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney,
Jamie M. Bennett, Assistant United States Attorney, Baltimore, Mary-
land, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In the fall of 1996, a federal grand jury in the district of Maryland began investigating Anthony Jones and his associates for narcotics and murder offenses. In January 1997, after the grand jury returned the first of four indictments against Jones charging him with both murder and drug offenses, his foster brother John Jones testified before the grand jury about certain vehicles used by Anthony Jones in his drug business.

When Anthony Jones learned that John Jones had testified against him, he decided to have him killed. On February 24, 1997, during a telephone call recorded by the correctional institution in which he was incarcerated, Anthony Jones directed his lieutenant to have John Jones "whacked." And, on the night of February 26-27, 1997, John Jones was fatally shot four times in the specific manner ordered by Anthony Jones. Based on information provided by informants, law enforcement officers ultimately concluded that John Jones was killed by two juveniles, Hilton Thomas and appellant T.E.S.

On November 19, 1997, appellee, the United States, petitioned the Circuit Court of Baltimore City for release of court records concerning T.E.S. and Thomas, averring that the juveniles were to be federally charged by information with certain offenses, including murder. The United States' petition was granted on that day, and appellant's records were transferred to the Clerk of the United States District Court for the District of Maryland, where they remained under seal. On January 8, 1998, a juvenile information was in fact filed charging T.E.S. with murder in aid of racketeering, in violation of 18 U.S.C. 1959; conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; and conspiracy to retaliate against witnesses, in violation of 18 U.S.C. §§ 371 and 1513. Two weeks later, counsel was appointed to represent T.E.S. in federal court, and in early April 1998, the magis-

2

trate held a hearing on the government's motion to transfer T.E.S. to the district court's adult criminal jurisdiction pursuant to 18 U.S.C. § 5032. The magistrate promptly issued a report and recommendations, which included a recommendation of transfer. The district court thereafter adopted the magistrate's recommendations, and appellant subsequently filed this expedited interlocutory appeal challenging both the district court's transfer order and the constitutionality of the state court's release of his juvenile record.

I.

Appellant first contends that his federal constitutional rights, specifically his privacy rights, were violated when the Maryland state court delivered his juvenile court records under seal to the federal district court, which court was considering, pursuant to a federal statute, whether to try T.E.S. as an adult on charges including the murder of a witness in a federal grand jury proceeding. We disagree with T.E.S. that the state court's transfer of his records violated his constitutional rights.

Maryland Annotated Code Section 3-828 provides, in relevant part, that "[a] court record pertaining to a child is confidential and its contents may not be divulged, by subpoena or otherwise, except by order of the court upon good cause shown." Md. Ann. Code, Cts. & Jud. Proc. § 3-828. Appellant contends that this statute creates a confidentiality interest, protected by the federal Constitution, in the contents of his juvenile record. Even if appellant is correct that a state may create a constitutionally protected "reasonable expectation of privacy" in the nondisclosure of a juvenile's criminal record-- itself a doubtful proposition, see Paul v. Davis, 424 U.S. 693 (1976) (declining to find a constitutional right to the nondisclosure of an individual's arrest record); J.P. v. DeSanti, 653 F.2d 1080 (6th Cir. 1981) (dissemination of juvenile social histories prepared by state probation officer did not violate any federal constitutional privacy right of juveniles) -- we conclude that Maryland has not done so here. A state law providing for the release of juvenile records upon "good cause shown" simply cannot be said to create a reasonable expectation that the state court will withhold those records from a federal district court required by statute to obtain and review such records as a condition precedent to the decision whether to transfer a juvenile to adult criminal juris-

3

diction. 18 U.S.C. § 5032. Particularly given that the state statute explicitly contemplates release of the juvenile records in the context of further judicial proceedings, see § 3-828(b)(5), (d), (e), and (g), any expectation appellant might have maintained that the material would not be made available to a federal court considering his transfer to adult criminal jurisdiction for the alleged murder of a witness in a federal grand jury proceeding simply could not be characterized as "reasonable." The two district court cases appellant advances in support of his novel claim are easily distinguished. See Sean R. v. Board of Educ., 794 F. Supp. 467 (D. Conn. 1992) (holding that a private right of action under § 1983 could lie for the unauthorized, public dissemination of confidential information by a county school board about a student's learning disabilities); Soucie v. County of Monroe, 736 F. Supp. 33, 35-37 (W.D.N.Y. 1990) (dismissing a § 1983 claim but recognizing in dicta a constitutional right of privacy where an employee of the county probation department "deceptively" obtained and "maliciously" disclosed the contents of a juvenile's pre-sentence report in direct contravention of state law).

Doubtless aware that neither caselaw nor the statute itself supports his "privacy" claim, appellant argues alternatively that the state has also created a "liberty" interest that cannot be abrogated without the full panoply of procedural protections that the Due Process Clause demands. In this regard, appellant relies upon a line of Supreme Court cases recognizing that a state statute or regulation may, under certain circumstances, create a liberty interest protected by the Due Process Clause. In the principal case upon which appellant relies, Hewitt v. Helm, 459 U.S. 460 (1983), the Supreme Court held that "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." Id. at 472 (emphases added). As a preliminary matter, appellant is apparently unaware that the Supreme Court several years ago explicitly repudiated this very approach to the "liberty interest" analysis. See Sandin v. Conner, 515 U.S. 472, 483-84 & n.5 (1995) ("abandoning" Hewitt's focus on the "search for negative implication from mandatory language" and returning to earlier focus on the "nature of the deprivation"). In any event, appellant's claim of a state-created protected liberty interest cannot satisfy even the more expansive, and now disavowed, standard he advances. The Maryland statute in question lacks both the "explicit

4

mandatory language" and "specific substantive predicates" required by Hewitt. A requirement of a showing of"good cause" before a court order may issue cannot be read to "explicitly" require particular procedural protections or provide any specific substantive predicates upon which a decision to release records must be based. Cf. Hewitt, 459 U.S. at 472 (Court considered prison regulations governing the imposition of administrative segregation that included an explicit requirement of notice, investigation, and a hearing, and established substantive predicates that segregation be based on"the need for control" or "the threat of a serious disturbance"); Olim v. Wakinekona, 461 U.S. 238 (1983) (Court looked to see whether"particularized standards or criteria guide the State's decisionmakers" before declining to find that Hawaii had created a protected liberty interest in a prisoner's right not to be transferred).

Finally, even if appellant were able to establish the existence of either of his asserted constitutionally protected rights, it is undisputed that he received notice, a hearing, and the able assistance of counsel -- all of the protections to which he now claims he was constitutionally entitled -- in federal court before his records were ever unsealed. We decline to hold that appellant's federal constitutional rights have been violated by his receipt in federal rather than state court of exactly the process he claims he was due.

Accordingly, because Maryland has created neither a"reasonable expectation of privacy" nor a "liberty" interest that would implicate constitutional due process protections and because, in any event, appellant received notice, hearing, and assistance of counsel in federal court, we affirm the district court's denial of appellant's motion to return his juvenile records to the state court.

II.

Turning now to appellant's second contention, that the District Court lacked jurisdiction over his prosecution under 18 U.S.C. § 5032 and erred in transferring him to its adult criminal jurisdiction under that section, we affirm the district court's transfer order.

As a threshold matter, we summarily dispose of appellant's claim that the federal court lacked jurisdiction under 18 U.S.C. § 5032 to

5

proceed against him in federal court. Section 5032 provides for federal jurisdiction over a juvenile upon the Attorney General's certification that the "offense charged is a crime of violence that is a felony . . ., and that there is a substantial Federal interest in the case or the offense." 18 U.S.C. § 5032. Appellant is accused of murder of a federal witness in aid of racketeering. It is difficult to imagine a case that implicates a more substantial interest than the prevention of retaliation against and intimidation of federal witnesses. We will certainly require no more in affirming the district court's exercise of jurisdiction in this matter.

The remainder of appellant's § 5032 claims challenge the district court's finding that his transfer to adult criminal jurisdiction was "in the interest of justice." We review the district court's transfer decision for abuse of discretion. United States v. Juvenile Male #1, 86 F.3d 1314, 1324 (4th Cir. 1996). After reviewing the magistrate's careful findings in light of our recent decision in Juvenile Male #1, we find each of appellant's claims to be without merit, and we affirm without hesitation the district court's transfer of appellant to the court's adult criminal jurisdiction for trial. Because each of appellant's other specific claims is squarely foreclosed by our decision in Juvenile Male #1, we address only one of appellant's particular assertions in any detail.

Section 5032 requires the court to consider and make findings as to six enumerated factors in determining whether transfer to adult criminal jurisdiction is in the interests of justice.* Appellant contends that in considering the second statutory factor, the "nature of the alleged offense," the district court improperly considered evidence

_____

*18 U.S.C. § 5032 provides, in relevant part:

> Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice: the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

6

"extrinsic" to the charged offense and undertook an "unwarranted examination of the strength of the government's evidence." In addition, appellant argues that the court placed "undue" emphasis on this single statutory factor. As to appellant's first objection, we find that the magistrate properly refrained from weighing the merits of the government's case, and that the magistrate's deliberate consideration of the particular circumstances of the offense charged is contemplated, if not required, by the statute. See In re Sealed Case (Juvenile Transfer), 893 F.2d 363, 370 (D.C. Cir. 1990) (holding that "nature of the alleged offense" factor does not allow court to consider evidence of offenses distinct from the offense charged, but noting that it is proper for court to consider the specifics of the offense charged in order to evaluate offense's "gravity" and the juvenile's "prospects for . . . rehabilitation"); United States v. Doe, 871 F.2d 1248, 1254 (5th Cir. 1989) (permitting hearsay evidence about the "nature" of the crime to be admitted in a transfer proceeding).

We further conclude that appellant's second objection to the district court's consideration of the nature of the offense, that the court unduly emphasized this factor, is foreclosed by our holding in Juvenile Male #1. In that case, we stated that"[i]n the weighing of the various factors, the nature of the crime clearly predominates." Juvenile Male #1, 86 F.3d at 1323. Given the indisputable federal interest in prosecuting the "premeditated assassination of a witness in a federal investigation," J.A. at 230, the magistrate was on firm ground in concluding that this factor would warrant transfer to adult status "even if all other factors were favorable to T.E.S." Id. Nevertheless, the magistrate proceeded, as the statute requires, to consider each factor in turn, and we find that the district court did not abuse its discretion in concluding, after balancing all of the factors, that the transfer of this "juvenile," one month shy of his eighteenth birthday at the time of the alleged offenses, to the district court's adult criminal jurisdiction was in the interests of justice.

CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

7