Rita A. COGSWELL, Plaintiff,

v.

COUNTY OF SUFFOLK DEPUTY SHERIFF'S DEPT., Deputy J. Bolleteri, Deputy G. Lynn, and Deputy E. Kennedy, Defendants.

No. 02 CV 4281 (ADS) (ARL.)

United States District Court, E.D. New York.

July 7, 2005.

Rita A. Cogswell, Lake Ronkonkoma, NY, Plaintiff Pro Se.

Suffolk County Attorney's Office, by Arlene S. Zwilling, Assistant County Attorney, Hauppauge, NY, for the Defendants County of Suffolk Deputy Sheriff's Dept. Deputy J. Bolleteri, G. Lynn, and E. Kennedy.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Pending before the Court is a motion by the defendants County of Suffolk Deputy Sheriff's Dept. (the "County" or "Sheriff's Department"), Deputy J. Bolleteri, Deputy G. Lynn, and Deputy E. Kennedy (collectively the "Defendants"), for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

## I. BACKGROUND

### A. Procedural History

On July 30, 2002, Rita Anne Cogswell ("Cogswell" or the "Plaintiff"), proceeding *pro se*, commenced this action against Suffolk County Hearing Examiner Rodriquez, Suffolk County Sheriff's Department, Deputy J. Bolliterri, and E. Kennedy. On October 2, 2002, the plaintiff filed an amended complaint, asserting claims for malicious prosecution, conspiracy to commit fraud, conspiracy to commit perjury, conspiracy to deceive, violation of civil rights, violation of the right to privacy, malfeasance, slander, harassment, prejudice, discrimination, breaking and entering, false arrest, defamation, illegal search and seizure and bias.

In a memorandum of decision and order, dated April 22, 2003, the Court dismissed the amended complaint, with leave to amend, because of Cogswell's failure to comply with Fed.R.Civ.P. 8(a). On May 8, 2003, the plaintiff filed a second amended complaint against Rodriquez, Deputy Bolleteri, G. Lynn, and E. Kennedy. In a memorandum of decision and order, dated January 24, 2004, the Court dismissed all of the claims against New York State Hearing Examiner Rodriguez on the grounds of, among other things, absolute judicial immunity.

### B. Factual Background

The background of this case is incorporated in this Court's two previous decisions

dated April 22, 2003, and January 24, 2004, familiarity with which is presumed. The relevant facts will be discussed for the purpose of addressing the instant motion. The facts have been taken from the second amended complaint, Cogswell's deposition on September 15, 2004, Cogswell's Rule 56.1 counter-statement, as well as warrants for the arrest of Cogswell's submitted by the Defendants.

In the second amended complaint, the plaintiff describes various incidents arising out of a child support hearing in the Suffolk County Family Court. On July 16, 2001, the plaintiff appeared for a child support hearing before Hearing Examiner Rodriquez, who was the presiding officer. Allegedly, when Rodriguez met with the Plaintiff and the father of her child, Rodriquez "told [the parties] to fight out in the hallway [sic] because he did not want to get involved." Thereafter, the Plaintiff left the courthouse, and claimed that Rodriquez refused to meet with her.

On July 17, 2001, Family Court Judge Ettore A. Simeone issued a bench warrant for the Plaintiff's arrest. The warrant was delivered to Cogswell's residence by the Sheriff's Department and was received by Cogswell. On August 1, 2001, Cogswell appeared in Family Court in response to the bench warrant, but left the courthouse before the proceeding commenced. That day, Family Court Judge Barbara Lynaugh issued a second bench warrant for the Plaintiff's arrest.

The second amended complaint alleges that Deputies Bolletari, Lynn, and Kennedy began searching for Cogswell pursuant to the bench warrant issued on August 1, 2001 by questioning several of her neighbors and friends as to her possible whereabouts. Cogswell states that in the evening of August 31, 2001, the Deputies received information that Cogswell returned home from Florida. That night,

the Deputies arrived at Cogswell's home that she shares with her boyfriend Kenneth Hemmendinger ("Hemmendinger"). He was in the house at the time and began tape recording the incident. Upon discovering this, Deputy Bolleteri confiscated the tape and tape recorder located on top of the television set and arrested Hemmendinger for obstruction of justice. After approximately ten minutes, the deputies located Cogswell in the house and arrested her. Cogswell was transported by car to the sheriff's office where she was held overnight. The next day, on September 1, 2001, Cogswell was released on bail.

Although the second amended complaint is not a model of clarity, a liberal reading of it reveals that the plaintiff apparently brings claims under Section 1983 for false arrest, unlawful entry into her home, unreasonable search and seizure of the tape recorder, a claim for "harassment," and tort claims under New York state law. The Plaintiff lists malicious prosecution in her first amended complaint as a claim, but the second amended complaint omits that claim, and it appears that there are no allegations that she was prosecuted for a crime. The Defendants now move for summary judgment based on the pleadings, the deposition of the Plaintiff, and the arrest warrant issued on August 1, 2001.

## II. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party bears the bur-

den of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed. R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

▮ Also, the Court is mindful that the plaintiff is proceeding pro se and that her submissions should be held "'to less stringent standards than formal pleadings drafted by lawyers ...'" *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Moreover, in order for the Court to properly dismiss a pro se plaintiff's complaint, "it must be beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Taylor v. Vermont Department of Education,* 313 F.3d 768, 775 (2d Cir.2002) (quoting *Lerman v. Board of Elections,* 232 F.3d 135, 139–140 (2d Cir. 2000)). Nevertheless, the Court is also aware that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law...." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (internal quotations and citation omitted).

▮ In addition, when the nonmoving party is pro se, summary judgment may be granted only if the undisputed facts "show that the moving party is entitled to a judgment as a matter of law," even if the

nonmoving party relies on its allegations and bald assertions. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996). Also, the Second Circuit has cautioned that a district court may only grant the motion if the pro se party has received notice that failure to respond to the motion "will be deemed a default." *Id.* In this case, with its motion for summary judgment the Defendant served a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required under Local Rule 56.2.

**B. As to the Section 1983 Claim for False Arrest**

▆▆▆ The Fourth Amendment provides the constitutional basis for claims of false arrest. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir.1995). It is well-settled that the "existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest ... under § 1983." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir.1996); *see also Singer* 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). In general, "an arrest pursuant to a valid warrant is presumptively made with probable cause." *Martinetti v. Town of New Hartford Police Dep't*, 112 F.Supp.2d 251, 252–53 (N.D.N.Y.2000). This presumption of probable cause can be rebutted only by a showing of "fraud, perjury, or the misrepresentation or falsification of evidence." *Artis v. Liotard*, 934 F.Supp. 101, 103 (S.D.N.Y.1996).

▆▆▆ Assuming that the Plaintiff could rebut the presumption of probable cause by showing that the warrant was issued erroneously, the claim would fail as a matter of law because the Deputies are entitled to qualified immunity. A law enforcement officer that reasonably relies on a facially valid warrant issued by a neutral and detached magistrate is generally enti-

tled to qualified immunity for such action. *See Simms v. Village of Albion*, 115 F.3d 1098, 1109 (2d Cir.1997). One exception to this general rule is if there exists some reason to question the validity of a warrant. *Id.* at 1107.

The Court finds that there was no reason to suspect the validity of the bench warrant issued by a Family Court Judge for the Plaintiff's arrest, under these circumstances. Although the Plaintiff's November 22, 2004 statement opposing the motion for summary judgment describes the August 1, 2001 bench warrant as "erroneous," the Deputies had no reason to believe the warrant was not valid. The warrant is facially valid and was issued by a neutral Family Court Judge. In addition, the Deputies took reasonable steps in carrying out the warrant by questioning neighbors as to whether the Plaintiff resided at the address stated on the warrant. As such, the Court finds that there was probable cause to arrest the Plaintiff, as a matter of law. In addition, the Deputies are entitled to qualified immunity based on the arrest warrant.

**C. As to the Section 1983 Claim for Unlawful Entry**

▆▆ The Plaintiff's unlawful entry claim is also without merit. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *accord United States v. Lovelock*, 170 F.3d 339, 343 (2d Cir.1999). This authority includes arrests pursuant to bench warrants issued for failing to appear in court. *See United States v. Spencer*, 684 F.2d 220, 223 (2d Cir.1982).

▆▆▆ Here, the bench warrant was issued for Cogswell's arrest due to her fail-

ure to appear in court. The warrant contained "special instructions" which read: "respondent to be taken into custody upon surrender or execution." The Defendants were in possession of the warrant, and therefore had authority to enter Cogswell's home. The Defendants had reason to believe the Plaintiff was within her home when they entered "as they were informed of [Cogswell's] return from Florida that evening," (Compl. at 4), and the time was approximately 10:20 p.m. *See United States of America v. Terry*, 702 F.2d 299, 319 (2d Cir.1983) (stating that there was a reasonable basis for agents to conclude the individual named on the warrant was at home when several individuals said he lived there and it was a 8:45 a.m. on a Sunday); *see also United States v. Michael Stinson*, 857 F.Supp. 1026, 1032 (D.Conn.1994) (holding that it was reasonable to believe the individual named in the warrant was home at 7 a.m.). Therefore, the Court finds that the Defendants are entitled to summary judgment dismissing the Plaintiff's claim for unlawful entry.

### D. As to the Claims of Harassment

█ In her complaint, the Plaintiff refers to instances where the Defendants approached neighbors and friends of Cogswell, asking where she was hiding. The Plaintiff claims that these instances constituted unlawful harassment. "Article III's requirement of a 'case or controversy' obligates the federal courts to hear only suits in which the plaintiff has alleged some actual or threatened harm to him or herself as a result of a 'putatively illegal action.'" *Leibovitz v. New York Transit Authority*, 252 F.3d 179, 184 (2d Cir.2001) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)); *accord Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343, L.Ed.2d 343 (1975). The Court finds that in this case, the events that the Plaintiff complains of are not a valid cause of action under Article III, as the Plaintiff suffered no injury directly and was not threatened by the Defendants questioning of her neighbors and friends as to her whereabouts. As such, the Defendants are entitled to summary judgment dismissing the Plaintiff's claims for harassment.

### E. As to the Alleged Unlawful Seizure of the Tape and Tape Recorder

█ The Plaintiff also appears to assert a claim for unlawful seizure of the tape and tape recorder that were taken from Hemmendinger. "The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions." *United States v. Edwards*, 415 U.S. 800, 802, 94 S.Ct. 1234, 39 L.Ed.2d 771. One exception is the "plain view doctrine" under which a seizure is constitutional if an officer is "lawfully located in a place from which the object can be plainly seen." *Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir.1994). Therefore, "the Fourth Amendment does not require a police officer to obtain a warrant before . . . seizing an item in plain view if there is cause to believe it is evidence of a crime." *United States v. Gori*, 230 F.3d 44 50 (2d Cir.2000); *accord Edwards*, 415 U.S. at 808–09, 94 S.Ct. 1234.

█ As discussed above, the Defendants' possession of a valid bench warrant for Plaintiff's arrest legally entitled them to enter the Plaintiff's home. During the time the Defendants were in the house to arrest the Plaintiff, Hemmendinger was placed under arrest for obstruction of justice. The tape and tape recorder were evidence of Hemmendinger's obstruction of justice and were in plain view to the defendants, as they were found on top of the television set. Therefore, the Defen-

dants did not unlawfully seize the tape and tape recorder. *See Spencer* 684 F.2d at 224 (the court concluded that a bench warrant issued for the Defendant's arrest justified police entry into the Defendant's home and permitted the police to seize evidence of a robbery that was found in the Defendant's closet while the police were searching for the Defendant).

Furthermore, the Court notes that the Plaintiff never stated who owns the tape and tape recorder. As discussed above, "Article III's requirement of a 'case or controversy' obligates the federal courts to hear only suits in which the plaintiff has alleged some actual or threatened harm to him or herself as a result of a 'putatively illegal action.'" *Leibovitz,* 252 F.3d at 184 (citing *Linda,* 410 U.S. at 617, 93 S.Ct. 1146); *accord Warth,* 422 U.S. at 498–499, 95 S.Ct. 2197. Therefore, if the tape and tape recorder belong to Hemmendinger, the Plaintiff would have suffered no actual or threatened harm and would have no standing to sue for the seizure of the property. Accordingly, the Defendants are entitled to summary judgment dismissing the Plaintiff's claim for unlawful seizure of the tape and tape recorder.

## F. As to the Claims against Suffolk County

 Municipalities may not be held liable under section 1983 for the acts of their employees based solely on a theory of respondeat superior. *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir.1989); *accord Soucie v. County of Monroe,* 736 F.Supp. 33, 38 (W.D.N.Y.1990). "For the municipality to be held liable, the plaintiff must show that constitutional deprivation was caused by municipal custom or practice." *Soucie,* 736 F.Supp. at 38. As stated above, there was no constitutional deprivation by the defendant deputies. Thus, there can be no section 1983 claim against

Suffolk County. *See Escalera v. Lunn,* 361 F.3d 737, 749 (2d Cir.2004) (holding that because there was no section 1983 claim against the individual police officer defendants the County was also entitled to summary judgment).

All of the allegations in the complaint are directed at the individual acts of the deputies and not the County. The Plaintiff has not alleged that a custom or policy of the County caused a deprivation of civil rights. A liberal reading of the complaint reveals that there are no allegations against the County, and it appears that it is only a defendant by virtue of being named in the complaint. As such, the Court finds that the motion for summary judgment dismissing the complaint against the County is granted.

## G. As to the State Law Claims

The complaint appears to allege various state law claims. In order to entertain these claims, the Court must exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. This statute provides, in pertinent part: "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." In addition, the Second Circuit has stated that "if [a]ll federal claims are dismissed *before trial* . . ., the state claims should be dismissed as well." *Motorola Credit Corporation v. Uzan,* 388 F.3d 39, 56 (2d Cir.2004) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)) (emphasis added in *Motorola* ). Because this decision grants the Defendants' motion for summary judgment dismissing all of the Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction and dismisses any and all state claims.

190

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendants' motion for summary judgment under Rule 56 of the Fed.R.Civ.P. is **GRANTED** dismissing the complaint in its entirety; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**